Isaac Wheeler, plaintiff in error *vs.* The State of Georgia, defendant in error.

On the trial of a prisoner who was indicted for the crime of murder in the county of DeKalb, where the crime was committed, after endeavoring to procure an impartial jury in the usual manner pointed out by law, the presiding Judge became satisfied that an impartial jury could not be obtained in that county, and passed the following order: " The State *vs.* Isaac Wheeler—The Court being satisfied that an impartial jury cannot be obtained in the county of DeKalb, for the trial of the above stated case, it is ordered by the Court that said case be transferred as to the defendants, from the county of DeKalb to the county of Fulton, and that the same be tried in said county of Fulton instead of the county of DeKalb, and that the Clerk of the Court in DeKalb

Wheeler *vs.* The State of Georgia.

make out, certify, and transmit a complete transcript of the record in said case to the Clerk of Fulton Superior Court.

[Signed.]                                        J. D. POPE, J. S. C."

This order of removal was objected to by the defendant, which objection was entered of record, but there is no error assigned in this Court as to that decision of the Court in DeKalb, as required by the 4191st section of the Code, so as to enable this Court to review it. There is another order in the record for the discharge of the jurors who had been sworn, in which it is recited, "that the Court having proceeded according to law to obtain a jury to try said case, and having, after using all necessary means, failed to obtain a jury, the jurors were discharged, and a new trial ordered, which was signed by the presiding Judge. On the trial of the case in Fulton county, the defendant moved to set aside the order removing the case, demurred and plead to the jurisdiction of the Court of that county, insisting upon his right to be tried in DeKalb county, in which the crime was committed, which motion, demurrer and plea were overruled by the Court.

*Held,* That under the Constitution the Superior Court of DeKalb county, in which the crime was committed, had the original jurisdiction for the trial of the defendant, except when the presiding Judge thereof is satisfied that an impartial jury could not be obtained in that county; and in that event, the Court had the power and authority, under the Constitution, the Act of 6th of October, 1868, and the 4593d section of the Code, with the consent of the Solicitor General and defendant, or his counsel, to select the county in which the defendant should be tried, and to order the case transferred accordingly. The Court *may* transfer the case to the county agreed on by the parties, or in the event they fail or refuse to agree upon any county, then the Court may transfer the trial to such county as he may select. The record in this case does not show that there was any agreement as to the county, but the legal presumption in favor of the judgment is, that they failed or refused to agree upon any county.

*Held further*, That the judgment of the Court in DeKalb county, removing the case to Fulton county, being the judgment of a Court of competent jurisdiction, could not be *collaterally* attacked in the Superior Court of Fulton county for irregularity, or as having been improperly granted, either on a motion to set it aside, or by demurrer or plea to the jurisdiction of the Court; and that the motion to set it aside, the demurrer and plea to the jurisdiction of the Court were properly overruled.

*Held also*, That the challenge to the array of jurors impanneled to try the prisoner was properly overruled by the Court, inasmuch as it was not affirmatively shewn that the jurors were not selected from those whose names were in the jury-box, or that they had not been selected and summoned according to law. The legal presumption is, that the

officers of the law performed their duty in the selecting and summoning the jurors, until the contrary is shewn by competent evidence ; and the same may be said in regard to the objection made to the twenty-four traverse jurors.

*Held again,* That there was no material error in the charge of the Court to the jury which could have influenced their verdict. And where the verdict is abundantly sustained by the evidence, as in this case, this Court will not be very *astute* in the discovery of errors, to set it aside, unless they be such as would have probably produced a different result.

Criminal Law. Venue. Jurors, etc. Before Judge Loch-RANE. Fulton Superior Court. September, 1870.

Isaac Wheeler and Pinckney Woodruff were jointly indicted in DeKalb Superior Court for the murder of Stephen Winn, a negro, in DeKalb county, on the 15th of May, 1869. At September Term, 1869, of DeKalb Superior Court, the defendants were arraigned and pleaded not guilty. They severed, and Wheeler was put upon trial. After ten jurymen had been sworn in to try him, Judge Pope, the presiding Judge, passed an order discharging said jurors and ordering a new trial. The reason for this order, recited in it, was that the Court had proceeded according to law to obtain a jury, and had failed, "after using all lawful means." He also passed another order that the case, as to both defendants, be transferred to Fulton Superior Court, and that the Clerk of DeKalb send a certified copy of the record to the Clerk of Fulton Superior Court. The reason for this order, recited in it, was that the Court was satisfied that an impartial jury to try said case could not be obtained in DeKalb county.

Wheeler's counsel then and there filed exceptions *pendente lite* to said transfer and had them certified and entered upon the minutes as required by law. Nothing more, as to this, appears.

In September, 1870, the case came on for trial in Fulton county, before Judge Lochrane, Judge Pope's successor.

Wheeler *vs.* The State of Georgia.

Wheeler's counsel moved there to annul said order of transfer, upon the following grounds: 1st. Because the reason given for the change of venue, in the order, was insufficient in law. 2d. Because Judge Pope was mistaken in supposing two more impartial jurors could not have been had in De-Kalb county, as many citizens of DeKalb "had not been put on any list or pannel of the jurors summoned in said case." 3d. Because the order was passed over Wheeler's protest "before all lawful and usual means and efforts had been exhausted in the matter." 4th. Because this order was, upon the Court's own motion, without notice to Wheeler and without opportunity for him to produce evidence to show that an impartial jury could be had. 5th. Because the order applied to Woodruff, when no effort had been made to get a jury to try him. 6th. Because the Court was misled and taken by surprise, and, in passing said order, acted hastily, without due deliberation, and to Wheeler's injury.

Wheeler's counsel proposed to argue these grounds. The Court refused to hear argument, and overruled the motion. Wheeler was put upon trial separately. By permission, he withdrew his plea of not guilty, and demurred to the jurisdiction of Fulton Superior Court, averring that the jurisdiction was in DeKalb, because the fact occurred there and the record of change of venue did not show all the facts necessary to change the venue at all or to Fulton county; it does not show a jury could not be had in DeKalb, nor that the Solicitor General and Wheeler's counsel could not agree as to the new venue, or that opportunity for trying to agree was allowed, or opportunity for showing that a jury could be had in DeKalb was allowed. 2d. Because the right to change the venue is a constitutional right, incapable of enforcement without legislation, and no legislation has been had on the subject. This demurrer was overruled.

His counsel then pleaded to the jurisdiction of Fulton Superior Court upon the following grounds: 1st. An impartial jury can now be had, to try said cause, in DeKalb

county, where the indictment was found, etc. 2d. Because the venue had been illegally changed as aforesaid. This plea was overruled. Wheeler then pleaded not guilty.

When the pannel of jurors was put upon him, the array was challenged upon the following grounds: 1st. Because his counsel had asked the Court for the original *venire* upon which the original pannel was ordered to be drawn and summoned, that they might decide whether the same was legally done, and it was refused. 2d. Because it does not appear of record that the pannel of twenty-four jurors were legally drawn and summoned. 3d. Because the pannel of twenty-four is composed in part of persons whose names were not on the original *venire* and were not drawn legally, and the twenty-four jurors, viz:   *   *   *   *   " were not in the box, composed of upright and intelligent persons, who alone are constituted by law competent jurors to be put upon the prisoner, and they do not appear to the Court to be competent jurors. 4th. Because the names of two of the jury viz:   *   *   are not in the jury box. This challenge to the array was overruled."

4. In selecting the jury, five of the first twenty-four who were put upon prisoner were respectively challenged for cause, upon the ground, that it appeared, from the records and minutes of the Court, that the name of neither of them was in the original pannel, as drawn from the jury box; nor did it appear that either name had been in the jury box. These challenges for cause were overruled. The jury having been impanneled, the State proceeded to introduce the evidence. So much of it as is material here, is as follows: Winn was with a party fishing, at night. This party were negroes. Wheeler, Woodruff, and others, white men, formed another party, hunting on the same creek. The white men came to where the negroes were, and the dogs of the negroes ran out after those of the white men and started to fight. One of the white men hallooed, with an oath, that he would kill the dogs of the negroes if they were not called off. One of the

Wheeler *vs.* The State of Georgia.

negroes ran up to the white men and Wheeler repeated the threat to kill the dogs. The negro parted the dogs and apologized, by saying that their dogs were young and untrained. Wheeler kept talking about shooting the dogs. The negro went back to his party and found them about moving to a different place. The white men were ahead, and while they were bothered about crossing the creek, the parties got together. Woodruff "got after" Winn, and Winn said to one of his party, "I wish I had brought my pistol." Woodruff said, "What do you want with your pistol?" He replied, "To defend myself, as other men do." Woodruff held out his pistol and said, "You talk about shooting into this party?" Winn replied, "No. I was not talking to you." Woodruff, putting his pistol in Winn's face, said, "You talk about shooting in this crowd, I will kill you, you G—d d—d yellow son of a b——h!" Wheeler was then fifteen or twenty steps ahead. Woodruff went right off, and Wheeler came with his torch in his left hand and his pistol in his right hand, and began beating Winn over the head with his pistol, and kept doing so, though Winn retreated, begging and saying, "I was not talking to you; please do not do it." Wheeler put his arm around Winn, fired his pistol and shot Winn in the back of the head. Winn fell, and the next day died from the wounds. Wheeler looked at Winn a moment after he fell, went to his own party, and when asked by one of them if he had shot Winn, said he did. Some one said he ought not to have done it. He said he "could not take any sauce from the negroes."

When the evidence as to the killing was concluded, the Solicitor General produced a certified copy of the record of the case, so far as they had occurred in DeKalb county, and offered to read only the said orders discharging the ten jurymen, and changing the venue to Fulton county. Defendant's counsel objected, because that was but a part of said record, and because the record did not contain the evidence which was taken by the committing magistrates. These objections

were overruled, and the orders were read to the jury. Pending the argument of the cause, Wheeler's counsel asked the Court to deliver his charge in writing, as required by the 234th section of the Revised Code. He proceeded and read to the jury his charge, as follows:

In this case, gentlemen of the jury, you are the judges, both of the law and the facts. It is only my duty to give you the law in charge, and it is for you to apply the law to the facts, with this qualification, gentlemen, that you have the right to disregard the opinion of the law given you in charge by the Court, in case you conscientiously differ with the Court as to what the law is. In the discharge of your duty, both you and the Court have an important duty to perform. We are here to administer the law of the land, irrespective of parties, according to our conscientious convictions of duty, let the consequences fall where they may. And inasmuch as the discharge of this duty is fraught with the greatest interests, and involves the highest and most important trust the law can delegate to men, it becomes you, gentlemen, free from all passion and prejudices, looking only to the law for your light, and the evidence for your facts, to find a verdict, based upon principles of law and justice. We have a simple duty to perform, and that duty is prescribed and limited by your oath when you were impanneled to try the issue formed upon the bill of indictment, and a true verdict give according to the evidence. The transfer of this case, by Judge Pope, is not before you as an issue to try. I have decided this question, and I could further remark, that you are not impanneled to try this case upon anything outside of the law and evidence; color has nothing to do with it, for the law recognizes no distinction of color. Justice is blind to distinctions or position in life, or color of the skin; a colored man has the same rights and is protected by the same law as the white, and no man has any right to infringe upon him; and this principle is essential to justice. Discard from your minds everything that might influence

Wheeler *vs.* The State of Georgia.

your judgment, predicated upon policy, partiality, or preju-
dice, and take the case, with its evidence alone to guide you
to a correct judgment.

Find, first, whether or not Stephen Winn is dead, and if
you are satisfied that he is dead, the second step you will
take in the case is to ascertain how and when and where he
came to his death.   If you find that he came to his death by
violence, at the time and manner alleged in the indictment,
then the next question to consider is, who committed the act?
In coming to a conclusion on this subject, you are to look to
the facts in evidence before you.   The law does not demand
everything to be proven positively, but does demand that
your minds will be satisfied.   Moral and reasonable certainty
is what the law requires; but, in criminal cases, the mental
conviction ought to be strong; for the benefit of every doubt
arising, reasonably, in the consideration of the case, is given
the prisoner.

If you believe that Stephen Winn was shot by the pris-
oner, the next question in the case, and a very important one
for you to decide, is, under the law of Georgia, what charac-
ter of offense, if any, did he commit.   In this consideration,
gentlemen, it will be my duty to give you the law.   Section
4253: Homicide is the killing of a human being, of any age
or sex, and is of three kinds—murder, manslaughter and
justifiable homicide.   It is hardly necessary, gentlemen, un-
der the law of this land, to remark that the term used, human
being, applies, with equal force, protection and power, to all
classes of our people; that the humblest stands before the law
the equal of the greatest, and there can be no distinction,
under our solemn covenant of official duty.   Section 4254
defines murder to be the unlawful killing of a human being,
in the peace of the State, by a person of sound memory and
discretion, with malice aforethought, either expressed or im-
plied.   Express malice is that deliberate intention, unlaw-
fully, to take away the life of a fellow-creature, which is
manifested by external circumstances capable of proof.

You will see, thus far, if you are satisfied that Wheeler shot deceased, and that the killing was unlawful, it is still necessary to ascertain, from the facts, whether it was with malice; for malice and killing must unite to make the prisoner guilty, under the charge of murder. Under the facts of this case, gentlemen, was the killing of Winn the "unlawful killing of a human being, in the peace of the State?" You will look to the evidence and weigh the various facts detailed by the witnesses. The law regulates and defines the principle governing self-defense, and I will read it to you. Sections 4264, 4265, 4266: "If, after persuasion, remonstrance, or other gentle measures used, a forcible attack on the property or habitation of another cannot be prevented, it shall be justifiable homicide to kill the person so forcibly attacking and invading the property or habitation of another. But it must appear that such killing was absolutely necessary to prevent such attack and invasion, and that a serious injury was intended, or might accrue to the person and property or family of the person killing." Section 4267: "If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing that, in order to save his own life, the killing of the other was absolutely necessary; and, it must appear, also, that the person killed was the assailant, or that the slayer had, really, and in good faith, endeavored to decline any further struggle before the mortal blow was given."

Now, to make the *killing lawful*, the law defines what facts must be proven. And to hold *the act lawful*, so tender is the law of life, that it requires the facts to show, as in section 4266, that some forcible attack was made on the property or habitation of another, and that the killing was absolutely necessary to prevent such attack, and that serious injury was intended, or might accrue to the person, property or family of the person killing, or that the danger was so urgent and pressing, at the time of the killing of Winn, that it became necessary, to save his own life, to kill him; and that Winn,

the deceased, was the assailant, and that the person killing him had, really, and in good faith, endeavored to decline any further struggle before taking life.

Now, except the prisoner act within the section of the law just given you in charge, the killing would not be lawful. But if, gentlemen, you find the killing to be unlawful, it becomes your duty to go further, and to inquire whether it was done with malice. For malice is an essential of the crime, and the law defines what constitutes malice. Section 4256: "Malice shall be implied when no considerable provocation appears, and when all the circumstances of the killing show an abandoned and malignant heart."

Section 4255—"Express malice is that deliberate intention to take away the life of a fellow creature, which is manifested by external circumstances capable of proof," *as by the weapon used*, and the deliberate action of the party.

I have given you thus far the sections of the law applicable to murder. It is for you to pass upon the evidence.

If you believe that Stephen Winn came to his death at the hand of the prisoner, your duty goes further, to ascertain whether he was killed under such · provocation or acts upon the part of the deceased as rendered his killing lawful. You will go, in mind, gentlemen, to the scene of death, and look at it, as it passes before you, in the blended light of law and facts. What was the deceased doing at the time of the killing? What act did he do, that is proven before you, that justifies the killing under the law of self-defense just laid down? *I say acts*; for provocation by words, threats, menaces or contemptuous gesture shall in no case be sufficient to free the person killing from the guilt and crime of murder.

In coming to a conclusion, you will scan the testimony closely. We have nothing to do with witnesses not produced upon the stand—the State is not bound to produce all the witnesses—and the rule of best evidence does not apply. We deal only with the case as proven, and if the defense of

the accused arrises out of the evidence of the witnesses for the prosecution, it enures just as much to his benefit as by the introduction of witnesses; in a word, gentlemen, the case stands on the evidence introduced, and from that alone you will decide upon it.

I charge you that the statement of witnesses, when unimpeached cannot be capriciously set aside. Relationship goes to the credibility of the witnesses only. And when witnesses are in conflict the jury may look to relationship as well as to other facts, to decide the question of credibility; but the testimony of a witness not impeached cannot be rejected on the ground of relationship. You, gentlemen of the jury, will look to the evidence, and if you find conflict, then apply the rule relative to credibility laid down. But if there is no conflict the rule laid down will govern you. On the question of conflict, gentlemen, in response to a request, I charge you that a man swearing he saw a pistol and another that he did not, does not make such a conflict in the statement of witnesses as authorizes you to set aside either. You will take the opportunity of both and reconcile them, and failing in that give credence to a positive witness over a negative one. If you believe from the evidence that Stephen Winn came to his death at the hands of the prisoner, by a *pistol shot*, under the rules of law laid down, and you believe further, from the evidence, that, at the time of the killing, Winn was in the peace of the State, and that such killing was not absolutely necessary to save his, the prisoner's, own life, or that it was not absolutely necessary to prevent such an attack as I have already referred to, and to prevent such attack and invasion, and that a serious injury was not intended, or might accrue to the prisoner's property or family, and that the killing was done with deliberate intention, and there was no considerable provocation, and the circumstances of the killing show an abandoned and malignant heart, and you believe this, gentlemen, beyond reasonable doubt, then it will be your duty to find the prisoner guilty of murder.

Wheeler *vs*. The State of Georgia.

But if, on the other hand, you believe that Winn did not come to his death at the hands of the prisoner, by a pistol shot, under the rules of the law laid down, or if you believe that it was absolutely necessary to save the prisoner's own life, or that it was absolutely necessary to prevent such an attack as has been read to you from the section 4266 of the Code, or if you believe that there was considerable provocation, and there was no malice, express or implied, in the killing of Winn, the deceased, or if you have reasonable doubts of these facts, then you will not find him guilty of murder.

In coming to your judgment you will be governed by the evidence of the case. See the case only by the evidence. All appeals and eloquence of counsel are intended to present in a forcible manner the various sides of their case, and are entitled to consideration as far as they apply to facts proven or illustrations invoked, to give them strength; all matters outside of this are not to be considered by you in making up your verdict.

It matters nothing to you what previous history may be invoked, or what criticisms or eulogiums may be expressed— it matters not what other crimes may have been committed in this country, or what other juries may have done or failed to do, what policy may demand of the country, what has been said or may be said about your verdict, what influences may be invoked to excite your feelings or sympathy or otherwise—I tell you, gentlemen of the jury, to do justice, though the heavens fall. Throw aside everything but your oath and the facts of the case and the law of the case. If you believe beyond reasonable doubt that Wheeler killed Winn, what was Winn doing to him when he done it. Now, stop right there, and go through the testimony carefully and considerately. I have read you the law—see if he did anything that the law read to you recognizes as justification, palliation or defense. You are exclusively to pass upon the facts, and I only invoke from you a full and deliberate review of the evidence, applying the law given you in charge.

Much has been said, gentlemen, about your being the judges of the law and fact. I have given you this in charge. You are judges of both the law and the facts, and if you differ, gentlemen, with the Judge, conscientiously as to the law, it is your duty to differ with him. But, gentlemen, the law I have read to you is the *law of Georgia,* from the Code of this State, and about this law there can be no difference between me or you.

In this case I have limited myself to the law of Georgia. I give you that in charge. So far as any opinion upon that law is offered by me, you have the right, and it is your duty, as laid down, to differ with me. But as to the law itself, you are bound by it, as the law that governs you in this case. Apply it to the facts. And right here, gentlemen, I read you the 4259th section of the Code. If you find that that this is not murder, under the facts and law, then it becomes my duty to call your attention to the law further to be considered: 4258—"Manslaughter is the unlawful killing of a human creature, without malice, either express or implied, and without any mixture of deliberation whatever; which may be voluntary upon a sudden heat of passion, or involuntary in the commission of any unlawful act without due caution and circumstances." And if you believe, gentlemen of the jury, that the evidence in this case shows that the killing was, by the prisoner, without malice, either express or implied, that it was done without the deliberation mentioned in the law, but that it was done upon a sudden heat of passion, then, gentlemen, it becomes my duty to explain what acts reduce a homicide to voluntary manslaughter.

To reduce the crime to manslaughter, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious injury upon the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied. The offense of voluntary manslaughter consists in the want of consideration and want

Wheeler *vs.* The State of Georgia.

of malice, and arising upon sudden heat of passion.  The Code defines what may justify such passion, and I charge you that you must be satisfied, from the evidence, beyond reasonable doubt, that there was an actual assault made upon the prisoner by the deceased, or that deceased attempted to commit some serious personal injury to him.  The words equivalent circumstances, are left to the jury to say whether anything transpired which was equivalent to the assault or the attempt to do a serious injury, in its sudden startling of passion, which might overrun the channels of reason and overflow the mind with sudden impulse and emotion, shutting out the effort of judgment to deliberate or act with malice.  Now, the Code puts a limitation, as a negative, on your action in construing what will not be equivalent, for it says, " provocation by words, threats, menaces, or contemptuous gestures, shall, in no case, be sufficient to free the person killing from the guilt and crime of murder."

And I charge you that you must be satisfied that the killing was the result of sudden and violent passion, excited by something *which he did,* equivalent to an assault or attempt to do the prisoner some serious personal injury.  The law has laid down the general rules and defined the offenses growing out of homicide.  I have, thus far, given you the law of murder and voluntary manslaughter, and the law of self-defense.  It is left to present to you the law of involuntary manslaughter.  Section 4261 : " This consists in the killing of a human being, without any intention to do so, but in the commission of an unlawful act, or a lawful act which might, probably, produce such a consequence, in an unlawful manner."

If you believe the facts of this case do not make murder or voluntary manslaughter, under the law, then, gentlemen, you will look further to ascertain if this is a case of involuntary manslaughter.  In other words, gentlemen, if you believe that the prisoner killed Winn, and that it was done without any intention to do so, then you will go further to ascertain

as to whether the act was lawful or unlawful, under the circumstances under which it was done; for the law says, provided, always, that when such involuntary killing shall happen in the commission of an unlawful act, which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, or of a crime punishable by death, or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder.

Another matter, gentlemen of the jury, I am called on, in argument, to give you in charge, is the effect of drunkenness. Drunkenness is no excuse for crime; but if you believe, from the evidence, he was drunk at the time, and he had such provocation as the law recognizes, the fact that he was drunk may be considered in making up your verdict; but, before the law applies, there must be such provocation as the law recognizes.

This case is in your hands; you have nothing to do with the prejudices of the case. It is your duty, on your oath, to take only the case as it has been proven—decide it upon the testimony. Stand between the State and the accused, looking neither to the right hand nor to the left, but start on the line of duty, boldly looking forward to reach the truth. Pause and consider well; for, in the application of the law to the *truth*, you will reach justice and judgment. To know the truth, you are clothed with the power of examination, and I have given you the law; take it to your room and closely investigate the whole matter, and find a verdict according to your judgment and conscience, upon the law and facts."

In charging the jury, he not only read from his written charge, but also reread from the Code, sections 4264, 4265. The jury having been in their room a short time, asked the Court to explain to them again the difference between voluntary and involuntary manslaughter, which he proceeded to do, and did not only explain such difference, but also the difference between manslaughter and murder, by reading to the

jury sections 4258 to 4261, of the Code, omitting the parts prescribing the penalties, all without the consent of prisoner, though the prisoner and the counsel were present in Court, and interposed no objection.   The jury returned a verdict of guilty of voluntary manslaughter, and immediately thereafter the foreman informed prisoner's counsel and the Court that it was the unanimous desire of the jury to recommend the prisoner to the mercy of the Court, and that they would have included the recommendation in their verdict, if they had thought they were authorized to do so.   The Court then adjourned until another day, with the announcement that, on that day, sentence would be passed on Wheeler.

Upon the reassembling of the Court on said day, Wheeler's counsel moved to arrest the judgment, upon the grounds that the certified record from DeKalb county did not show any legal ground for changing the venue, nor that a legal jury could not be obtained in DeKalb county, nor that Wheeler's counsel and the Solicitor General could not agree upon the county to which to transfer the case, and against the written protest of prisoner, (this protest does not appear in the record); and because the Clerk of DeKalb had not sent up as part of the record, a copy of the evidence used on the committing trial.   This motion was overruled.   Counsel then moved for a new trial, upon the following grounds: 1st.  Because of the refusal to set aside the order of removal to Fulton county, on the grounds taken aforesaid.   2d.  Because of the refusal to hear argument on said last mentioned motion.   3d.  The overruling the demurrer as to the jurisdiction in Fulton county, on the grounds stated in that demurrer, and in overruling said several pleas to the jurisdiction of Fulton Superior Court.   4th.   The overruling of the challenge to the array, on the grounds stated aforesaid, and the challenge for cause as to the two jurors whose names were not in the jury box of Fulton county, and to the others who were not of the original pannel as aforesaid.   5th.  Because in charging the jury the Judge read part of it, not

from his written charge, but from the Code, as aforesaid. 6th. Because when the jury returned into Court for further explanation as to the difference between voluntary and involuntary manslaughter, the Judge gave that explanation, and also explained the difference between manslaughter and murder, by reading the definitions from section 4258 to section 4261 of the Code, (except the parts prescribing the penalties) without prisoner's consent. (Prisoner and his counsel were present and made no objection.) 7th. Because after so reading from the Code he asked the jury whether they understood the explanation. 8th. Because the charge of the Court was contrary to law. 9th. Because he permitted a part of the record from DeKalb county introduced as evidence by itself; and 10th, because the verdict was strongly and decidedly against the weight of the evidence, contrary to the charge of the Court and the law.

This motion was overruled, and Wheeler was sentenced to the penitentiary for twenty years. Error is assigned upon the said several grounds for new trial.

L. J. GARTRELL; ARNOLD & BROYLES, for plaintiff in error.

E. P. HOWELL, Solicitor General, for the State. As to change of venue: Art. V., sec. 12, Par. 2, Constitution of 1868, and Revised Code, sec. 4593. As to matters in the discretion of the Judge below: 38th Ga., 506; 14th, 6; 26th, 493; 27th, 411; 2 Kelly, 183. In Fulton Superior Court, the change of venue was *res adjudicata.* The order of removal was sufficient: 1 Bish's Cr. Pro., 113, note 1. Order not traversable: 1 Chitty's Cr. L., 201. The transfer was regular: Revised Code, sec. 4593. As to challenge to jurors: 14th Ga. R., 45; 22d, 557; 1st Bish's Cr. Pro., 114, note 1; 26 Ala. R., 52. The reading from the Code, in charging the jury, was right: 12 Ga. R., 329. As to other matters in the charge: 32d Ga. R., 679; 11th, 630, *et seq.;* 24th, 305.

WARNER, J.

When there is no material error in the charge of the Court to the jury which could have influenced their verdict, and when the verdict *is abundantly sustained by the evidence*, as in this case, this Court will not be very *astute* in the discovery of errors to set it aside, unless they be such as would have, probably, produced a different result.    Looking at the evidence in the record, and after reviewing the grounds taken in the motion for a new trial, we are of the opinion that there was no error in the Court below in overruling the same, which will authorize this Court to reverse it; and that the defendant should be well satisfied with the verdict of voluntary manslaughter, and the penalty imposed on him by the Court therefor, under the evidence in this case.

Let the judgment of the Court below be affirmed.