Braswell *vs.* The State of Georgia.

NATHAN BRASWELL, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. When, in a trial for murder, the defendant offered testimony in relation to the character of the house (being a house of ill-fame,) where the homicide was committed, which was rejected by the Court:

*Held*, That this was not error, as, under the facts, it was not relevant to the issue in the case.

2. When the Judge refused to charge the jury: "If the deceased said the prisoner stole the lamp, and deceased called him a damned liar, and deceased rose up and put his hand in his pocket and advanced toward defendant, that such conduct was sufficient to excite the fears of a reasonable man:"

*Held*, That this was not error; for such question was one for the jury to find, upon all the proof in the case.

3. When the Court gave the converse of this proposition in charge, reciting the facts, but not all the facts, which showed the intent, whether the act was done by malice, and concluded by telling the jury, if they found the facts recited to be true, the case was murder:

*Held*, That this was error in the Court, and not the proper manner of presenting the question to the jury for their adjudication, under the law of this State.

4. When the facts of the case show clearly that the *act* of the killing was without any legal provocation, and, in fact, constituted the crime of murder, under the law:

*Held*, That this Court will not interfere to set aside the verdict for a charge of the Court, though expressed in language too strong against the accused, if, from all the evidence, this Court is satisfied with the verdict.

Criminal Law.   Murder.   Tried before Judge CLARKE. Dougherty Superior Court.   June, 1870.

Braswell was charged with having murdered one Lockley with a gun.  A physician testified for the State, that Lockley died on the day stated, from a gunshot wound in his breast. On cross-examination, he said that the character of the women at the house where Lockley was killed "was none of the best."  Another witness for the State gave this account of the killing:  Witness and a woman named Hickerty, were present at her house, and deceased was there, about four feet from him, sitting down.  Prisoner came to the door, and

Polly Kerbro stepped up to the door and asked deceased if prisoner was not the man who stole his lamp. Prisoner, at that time, was outside the door. Deceased said he was the man who stole the lamp. Prisoner was at the door, and said if deceased said he stole the lamp, he was a damned liar. Deceased rose, ran his right hand in his right pocket, and prisoner stepped in on the floor and shot deceased immediately. The pistol was not more than two feet from deceased when prisoner fired it, and deceased's hand was then in his pocket, but he drew no weapon. Prisoner ran. It was about eight or nine o'clock, P. M.; there was a light in the fire-place. The house was a double house. Polly lived in one end and Hickerty in the other. Another witness gave substantially the same version of the affair. The State closed.

During the examination, defendant's counsel asked the State's witness if said house was not a house of ill-fame, kept by white women for the accommodation of whites and blacks, and whether deceased and his associates frequented them. But the Court would not allow the question answered. The requests to charge and the charge, as given, appear in the motion for new trial. Defendant was found guilty of murder. His counsel moved for a rule *nisi* for a new trial upon the following grounds:

1st. The Court erred in rejecting evidence of the character of the house.

2d. The Court erred in refusing to charge that, if deceased said that prisoner stole the lamp, and deceased called him a damned liar, and deceased rose up and put his hand into his pocket and advanced towards defendant, such conduct was sufficient to excite the fears of a reasonable man; and in charging that such facts were not sufficient to excite the fears of a reasonable man; that if deceased said defendant stole the lamp and defendant called him a damned liar, and deceased rose up and put his hand in his pocket, and defendant, advancing with a drawn pistol in his hand, immediately shot deceased and death ensued, it was murder.

3. The Court erred in charging: Malice is implied in all cases where the slayer takes life for words, threats, menaces, etc.; as if A call B a rogue, and B shoots A down on the spot, without other provocation, it is malice.

The Court refused to grant the rule *nisi*, and this refusal and said averred errors are the grounds relied upon here.

D. H. POPE, GEORGE KIMBROUGH, by S. B. SPENCER, for plaintiff in error.

R. H. WHITELY, by E. P. HOWELL and the REPORTER, for the State.

LOCHRANE, C. J.

1. This was an indictment for murder, in Dougherty Superior Court, and a verdict of guilty and motion for a new trial. The first ground of error is predicated upon the refusal of the Judge to admit evidence in relation to the character of the house and its inhabitants, where the homicide took place. In the opinion of the Court this evidence was not material or pertinent to the issue. Conceding it to be a house of ill-fame, it had nothing to do with the guilt or innocence of the prisoner. If parties frequent houses of disreputable character, or place themselves in the association of their inmates, the character of the houses is no excuse for any act of crime or violation of law committed therein; except such act grows out of jealousy, conduct or connection with parties therein, and is material to show the feeling of the parties in immediate connection with the homicide. Under the facts in this case, the character of the house or connection with its inmates had nothing to do with the transaction.

2. The second ground is the refusal of the Judge to charge: "That, if deceased said the prisoner stole the lamp, and defendant called him a damned liar, and deceased rose up and put his hand in his pocket and advanced toward defendant, such conduct was sufficient to excite the fears of a reason-

able man." We do not think the Court erred in refusing this charge. It was the province of the jury to determine whether the acts of the deceased were, or were not, sufficient to excite such reasonable fears as would justify the homicide. It appears from the record that, in response to such request, the Judge charged the jury, that such circumstances were not sufficient to excite the fears of a reasonable man. Under the Code, section 4265, it is laid down: "A bare fear of any of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man." The testimony shows that after the prisoner called the deceased a "damned liar," he rose, put his hand in his pocket and advanced toward the defendant. Under these facts, was the Court authorized, in charging the jury, that such circumstances were not sufficient to excite the fears of a reasonable man? This Court, at the present term, in the case of *Stephen D. Mitchell vs. The State,* in an indictment for an assault with intent to murder, held, that " the putting the hand in the pocket by the party when assailed, did not justify the assailant in beating him ; that it required some act or appearance of drawing a weapon. Men must depend on something more than this, without the assistance of threats. There must be some apparent preparation to draw a weapon ; something showing the party has, in fact, a weapon; something more than imagination or bare fear to justify or palliate acts of violence to the person." Under this ruling, upon examination of the testimony, the fear excited by putting the hand in the pocket was only a bare fear that he might draw a weapon, or that he had a weapon ; but was not sufficient, in itself, to justify the taking of human life. This act of deceased, the prisoner having his pistol drawn at the time, was not such an act as justified the homicide. The charge of the Court in this case was the converse of the proposition requested, and, under the rule laid down in 27 *Georgia,* the

Braswell *vs.* The State of Georgia.

converse of a proposition, provided the proof preponderates that way, was held by this Court not to be error. Such view excludes, however, in cases of murder, the question of intent or malice from the jury, and we think the Court erred in its further charging the jury, that the facts made the act murder.

3. The third ground of error is, that the Judge charged that malice is implied in all cases where the slayer takes life for words, threats or menaces, without other provocation. Such we hold to be within the meaning of section 4259 of the Code; 25 Georgia, 210; 39 Georgia, 31; 24 Georgia, 298. Malice is implied from any deliberate act, however sudden: 3 Kelly, 326. Deliberate killing, with great provocation, is murder; that words, threats and menaces are insufficient, is held in 28 Georgia, 203, 219; 29 Georgia, 607. Code, section 4256, says: "Malice shall be implied where no considerable provocation appears." And section 4259, in defining voluntary manslaughter, declares: "Provocation by words, threats, menaces, or contemptuous gestures shall, in no case, be sufficient to free the person killing from the guilt and the crime of murder." The law demands some actual assault, or an attempt to commit a serious personal injury, or other equivalent circumstances; and such equivalent circumstances must, in effect, be equal to an assault, or an attempt to commit a serious personal injury. For the same section declares provocation by words, threats, menaces, or contemptuous gestures not to be equivalent; for these, in no case, shall be sufficient to reduce the killing from the guilt and crime of murder. In the case of *Mitchell* decided at this term, this Court held, that newspaper articles, though slanderous, and scattered through every household, were insufficient to justify an assault and battery; and, upon like reasoning, abusive words would not justify a homicide, but, under the facts in this case, the abusive language came from the prisoner, and, from the proof, no answer was made by the deceased. We have already held that his acts did not

justify the homicide, and the Code, section 4259, says the provocation was insufficient. In 24 Georgia, 305, this Court held that the terms of the law, to commit a serious personal injury on the person killing, means a bodily injury, and not a personal affront or personal wrong. But if we take the words of deceased, that the prisoner was the person who "stole the lamp," and regard this accusation as the primary affront, there is still nothing in that to reduce the crime; and the reply of the prisoner, coupled with his having a pistol drawn, exhibited, in the opinion of the Court, such deliberation as authorize the verdict in this case.

4. And, being satisfied with the verdict upon the facts, we affirm the judgment.

Judgment affirmed.