## 51683. FINCH v. THE STATE.

PANNELL, Presiding Judge.

Upon motion for rehearing, and the filing of a supplementary record of evidence and proceedings in the case, the facts appear to be as stated hereinafter.

The State Court of Clarke County convened the May, 1975 term of court for the sole purpose of trial of criminal cases. Petit jurors had been summoned and were present in the courtroom.

On the morning of May 15, 1975, the solicitor of the court called several cases and, for various reasons known

to the court, but unknown to the jurors assembled, it was impossible to immediately begin the trial of any case.

The solicitor announced that he had cases which he thought could be tried that afternoon but that he needed permission to go to his office to ascertain if he had any further cases that could be tried that morning. Permission was granted.

While he was thus absent from the courtroom, the judge, observing the restlessness of the jurors, declared a recess, left the bench and stood in the area before the jurors and made an explanation of the delays. It was stated that some attorneys in cases called were in higher courts than his and that as his court was of inferior jurisdiction to those courts, the case or cases were automatically continued. That, in some cases "called bonds" had been forfeited because of absence of defendants. That bench warrants were issued for those not present, and that this consumed time. That all cases could not be set for trial on any given day because of limit of space for all parties. That due to alleged shortage of funds and multiplicity of cases, all subpoenas in all cases had not been served. That due to overcrowding of correctional institutions and court personnel to supervise those convicted, the court had not been able to do its job efficiently. That the court was holding the jurors to see if any cases could be tried by them that morning. That persons such as the jurors should bring pressure on county and state officials to properly fund the courts.

He further stated that it was an imposition for jurors to be compelled to stay in court when defendants did not appear, but that it was necessary for them to remain in order to be ready to try those who did appear for trial or plea.

The jurors were invited to ask questions of the judge and did so. During this discussion it was stated that nearly two-thirds of those arrested were repeaters. That through experience it had been found that if a juvenile offender could be properly treated and supervised he or she would not tend to repeat their criminal activities; that otherwise, having found the first offense to be easy, many later tended to commit misdemeanors; that if misdemeanor offenders could be apprehended and

properly treated and supervised, they would tend not to go on to the more serious crimes and felonies; that unless an offender did receive proper treatment and supervision as a juvenile or misdemeanant, or had escaped apprehension for these lesser crimes, the offender would often go on to commit felonies. No defendant's name was called or any case mentioned.

In the afternoon of the same day, the case of Jessie Finch versus the state was called. The defense attorney asked for a continuance on grounds that the speech of the judge made it impossible to get an impartial jury; that the judge's speech had prejudiced the jury, and that such prejudice could not be erased from their minds.

The defense attorney was given great latitude in his voir dire examination and the judge qualified the jury as to whether there was any prejudice or bias on their minds. *All answered that they were not prejudiced or biased* between the state and the accused. They, after statements by the judge and questions by attorneys, stated they had not been prejudiced against the defendant and could fairly try the case. *Held:*

1. Enumeration of error No. 1 is that after the prejudicial speech by the judge, appellant could not strike a panel of impartial and disinterested jurors.

Held as to this enumeration: the jurors all responded as being qualified as to freedom from prejudice and bias as between the state and the accused after thorough explanations and questions. They were the highest and best judges of their feelings. In this enlightened day and time we are aware that all jurors have some prejudice, but that this does not impair their ability to be fair in judgments under the evidence presented to them. These jurors were not, by their statements, prejudiced as between the state and this accused, and that is all that was necessary to qualify them.

Chief Justice Lumpkin, in the case of *Parker v. State,* 34 Ga. 262, 266, said: "On the trial, when empaneling the jury, the statutory question was propounded to one James C. Thurman — that is, whether his mind was perfectly impartial between the State and the prisoner? He answered that he was not satisfied that he was, — adding, that he had partiality in his mind. In reply to questions

put by the court, he stated that he did not personally know the prisoner, or the facts of the case, and had no prejudice against the prisoner as an individual, but in all such cases, because of the offense, he was prejudiced. The Court decided him to be competent, and he was challenged by the prisoner peremptorily.

"Now, the only question is, does the prejudice referred to in the law apply to the person of the accused, or to the offense for which he stands indicted? We think the former: otherwise, all good men would be disqualified to sit as jurors in all criminal cases. For, if they feel as they should do, they should desire the suppression of crime, and this desire will be in proportion to the aggravation and frequency of the offense. This feeling may serve to stimulate their zeal to bring delinquents to punishment. But it does not follow, by any means, that it will so warp their judgment as to render them incapable of doing justice to the parties, according to the law and the evidence of the case."

The court held this juror competent. Under the facts in the present case, as to these jurors, even conceding, but not deciding, that prejudice was engendered by the remarks of the judge it could only have been against the crime, not this defendant. We may speculate as to their prejudice or bias but only a juror can answer for himself. There is no merit in this enumeration.

2. The second enumeration is that the court erred by expressing his personal opinion and that he shattered the presumption of innocence by his remarks. Jurors are reasonable, everyday citizens. With the bombardment of television, newspapers, speakers, government rulings and edicts they must of necessity be able to hear statements that affect their thinking and views, but do not impair their ability to rule fairly as jurors under the evidence presented.

The jurors in this case stated that they had no prejudice or bias between the state and the accused. This, after questions by the court and by the defense attorney. The jurors' questions emphasized that the speech of the judge did not influence them as to this case. They were competent jurors. The charge as to presumption of innocence was given to them. See *Wilburn v. State,* 141

Ga. 510, 511 (3) (81 SE 444); *Norton v. State,* 137 Ga. 842 (1) (74 SE 759).

3. The third enumeration is that reversible error was committed in failing to grant a mistrial because the judge's conduct was inconsistent with the code of judicial conduct.

There is absolutely no merit in this enumeration. A trial judge does not have to be silent as to his views, except as to trial of case and evidence, etc. In this case the judge and some of the jurors agreed that his explanation helped them understand and appreciate the trials and tribulations of small courts and all courts. There is no indication by the record that the judge violated any judicial ethics in explaining his dilemma to the jurors.

I have dealt with these enumerations as they are the only ones before this court. No enumeration, other than as to alleged prejudicial remarks is before this court. No other errors are enumerated, and as was said by Justice Almand in *Hess Oil &c. Corp. v. Nash,* 226 Ga. 706, 709 (177 SE2d 70): "We do not know of any law or rule of practice and procedure that authorizes the Court of Appeals or this court to examine the entire record and grant a new trial upon a ground of their own making and not upon a ground specified by the appellant. The duty of the appellate court is to correct errors alleged to have been made in the trial court and not to manufacture them."

A judge should be an impartial umpire between the state and the accused. He should conduct himself at all times so as not to indicate how he thinks the jury should find in any case being tried.

We think the judge went too far in his discussion concerning the treatment of criminals, and in this respect erred. We do not approve of or condone his actions. We do not approve of the practice of judges making speeches that go as far as this speech did. However, under all the record, the time element, and answers of jurors as to their prejudice and bias, we do not think it was reversible error in this case for the reasons stated herein.

Jessie Finch was tried and convicted under accusation on two counts, (1) speeding, (2) racing. The evidence of the state was undisputed that he was driving his automobile on the expressway at a rate of speed in

excess of 99 miles per hour; that he was racing with another car driven by Donald Richardson (who was killed when his car overturned during the race). The defense offered no witnesses. As was said by Chief Justice Jackson in *Hussey v. State,* 69 Ga. 54, 57: "There is no room, at all, for doubt as to his guilt. It is the strongest case, of the sort, ever brought to this court within our knowledge and recollection, and no matter how many trials he might have, the facts and law absolutely demand the verdict of guilty, and such it would be unless both facts and law were outraged by the jury and their oaths violated." *Hussey* was a tippling house case, but the language used fits this case like a glove. Further, in the same opinion at page 59, paragraph 2, we find the following: "Where, as in this case, the evidence demands the verdict, inaccuracies, or even errors of the court, unless of very material gravity, will not require a new trial." Citing *Wheeler v. State,* 42 Ga. 306; *Braswell v. State,* 42 Ga. 609. In the latter case, Chief Justice Lochrane held that this court will not interfere to set aside the verdict for a charge of the court, though expressed in language too strong against the accused, if, from all the evidence, this court is satisfied with the verdict. (This was a murder case. That court refused a new trial.) (We do not agree that a verdict of guilty is demanded in any criminal case, but cite this as to all evidence being undisputed, and as to result.)

In the case of *Johnson v. State,* 14 Ga. 55, 65, a rape case, Judge Lumpkin said: "A new trial ought never to be granted, notwithstanding some mistake or even misdirection by the Judge, provided the revisioning Court is perfectly satisfied that justice has been done; and that upon the evidence, no other verdict could properly have been found." (Numerous citations at page 65.)

In the present case, upon review of the record and transcript, we think the verdict would have to be the same even if tried in every county in Georgia before 159 different juries.

Therefore, we hold that the conviction in this case is affirmed. If we are in error we have good company, for the judges quoted are better, in my opinion, than some who now sit on a much higher court than the quoted judges sat, and who strangle on technicalities and free those of whom

no rational person could doubt the guilt of the accused.

*Judgment affirmed. Quillian, Clark, Webb and Marshall, JJ., concur. Bell, C. J., Deen, P. J., and Stolz, J., concur specially. Evans, J., dissents.*

ARGUED JANUARY 9, 1976— DECIDED APRIL 29, 1976 — REHEARING DENIED MAY 18, 1976 —

*John W. Timmons, Jr., James W. Purcell,* for appellant.

*Ken Stula, Solicitor,* for appellee.

STOLZ, Judge, concurring specially.

The factual statements contained in the majority and dissenting opinions require no further elaboration. Suffice it to state that, at the conclusion of the defendant's counsel's questioning of the jurors, he made a motion for a mistrial, but he did not make a challenge to the poll of jurors. This was the defendant's remedy in the situation with which he was confronted. *Fields v. State,* 190 Ga. 642 (2) (10 SE2d 33); *Hill v. State,* 221 Ga. 65 (1, 2) (142 SE2d 909); *Hagans v. State,* 77 Ga. App. 513 (48 SE2d 700). This remedy, like many others available to litigants in our courts, may be waived by failure to make a timely and proper assertion of the alleged wrong. The record reveals no such challenge. Lest we be found to be "strangling on technicalities," we remind ourselves that the law itself is a collection of rules. The procedure provided for the trial of cases is to assure just, fair and orderly proceedings. The need for rules is perhaps best stated by the beloved late Chief Justice Logan Bleckley in *Cochran v. State,* 62 Ga. 731, 733: "Those who are impatient with the forms of law ought to reflect that it is through form that all organization is reached. Matter without form is chaos; power without form is anarchy. The state, were it to disregard forms, would not be a government, but a mob. Its action would not be administration, but violence. The public authority has a formal embodiment in the state, and when it moves, it moves as it has said by its laws it will move. It proceeds orderly, and according to pre-established regulations."

The record reveals that the defendant's counsel made a joint motion for mistrial and a continuance. "The time for making a motion for mistrial is not ripe until the case has begun, and the trial does not begin until the jury has been impaneled and sworn . . . *Barbour v. State,* 66 Ga. App. 498, 500 (18 SE2d 40). See also *Peavey v. State,* 153 Ga. 119 (1) (111 SE 420); *Newsom v. State,* 2 Ga. 60; *Reynolds v. State,* 3 Ga. 53 (2); *Nolan v. State,* 55 Ga. 521 (1) (21 AR 281); *Doyal v. State,* 70 Ga. 134 (3); *Franklin v. State,* 85 Ga. 570 (11 SE 876)." *Ferguson v. State,* 219 Ga. 33, 35 (131 SE2d 538). "Granting that the language in question was objectionable and would have been cause for a mistrial if uttered in the presence of the jury after the trial of the case had begun, we fail to see how, when spoken before the jury was selected, but in the presence of those who were summoned to serve as jurors, it could in any event constitute a ground for continuance. Under certain circumstances, improper remarks of counsel made in the hearing of prospective jurors might render it necessary for the trial judge, in order to assure a fair trial, to discard the panels of jurors already drawn and summon other panels from which to strike a jury. No request to this effect appears to have been made in the present case; so that we are not called upon to say whether or not the court erred in failing to adopt the course suggested. It is also unnecessary to decide as to the propriety of the remarks made by counsel to which objection was made; it is sufficient that under the circumstances they did not, even if improper, constitute a ground for a continuance." *Thompson v. O'Connor,* 115 Ga. 120, 122 (41 SE 242). "While the words 'continuance' and 'postponement' may be virtually synonymous, a motion for a continuance generally implies a request that the case go over to another term, while the use of the word postponement implies a request that the case be adjourned to a later time during the same term. Black's Law Dictionary, p. 1330. A motion for a continuance is addressed to the sound discretion of the trial court, and a ruling upon such a motion will not be disturbed by the appellate court unless it appears that the refusal to grant it was an abuse of the court's discretion. *Lowe v. State,* 185 Ga. 113 (2), supra. No abuse of discretion is shown where it does not appear that

movant invoked the explicit remedy to which he was entitled, to wit, a postponement of the trial to another day in the same term or until other panels could be drawn from which to select a jury." *Colonial Pipeline Co. v. Westlake Club, Inc.,* 112 Ga. App. 412, 413 (145 SE2d 669). See also *Lowe v. State,* 185 Ga. 113, 115 (2b) (194 SE 527); *Bowling v. Hathcock,* 27 Ga. App. 67 (1) (107 SE 384); *Fievet v. Curl,* 96 Ga. App. 535 (1) (101 SE2d 181).

Thus, while we deplore the factual situation presented, we do not reach the merits of the case. The defendant waived his remedy by failing to challenge the poll of jurors. Consequently, the matter is not before us for review, and we must concur in the judgment of affirmance.

I am authorized to state that Chief Judge Bell and Presiding Judge Deen join in this special concurrence.

EVANS, Judge, dissenting.

Defendant Jessie Finch was convicted on two counts of misdemeanor in the Clarke County State Court, and sentenced to serve 12 months, and on probation with payment of a fine of $1,000. He appealed to this court.

This case started off in a most unusual fashion. Being a state court, no grand jury was in session, but all of the jurors were traverse jurors. Before any case was tried, the trial judge left the bench, and walked down in the courtroom in front of the jurors and addressed them. His remarks were not recorded, because defendant had no prior notice of the necessity therefor nor that any such unusual maneuver would be practiced. But many of the things said in the speech have been reconstructed by questioning the jurors and by admissions of the judge himself and by his supplemental record of evidence and proceedings.

The judge began by saying he was speaking as a *private citizen and not as a judge* (albeit he was in his own courtroom, and the jurors were subject to his orders of remaining in the courtroom or leaving and to such other legal orders he might issue). He did not dismiss any juror. He was being paid as a judge for all of the time that he was addressing the jury, and when he resumed the bench he took up again as judge. It is somewhat difficult to follow

his reasoning in saying that he was speaking as "a private citizen."

While his speech must have had many, many facets, at least a large part of it revolved around courts and trials of defendants in criminal cases, although not all of it was on that subject. It was a little like "Alice in Wonderland" where "The time has come" the walrus said, "To speak of many things; Of cabbages and carpenters, And whether pigs have wings."

But part of his language was not of cabbages or carpenters; a part of same, admitted by the judge to have been spoken to the jurors, amounted to a direct appeal to the jurors to convict defendants "on this level" (meaning in this court) or they could go on to become felons. We quote from pp. 4 and 5 of the motion for rehearing: "That criminal activity rose at the fastest rate and the largest numerical increase in history during the year 1974, and that reports received by the trial judge indicated that approximately two-thirds of those arrested were repeaters and about half of these repeaters had been arrested more than twice. That through experience it had been found that if a juvenile offender could be properly treated and supervised he or she would not tend to repeat their criminal activities; that otherwise, having found the first offenses to be easy, many later tended to commit misdemeanors; that if misdemeanor offenders could be apprehended and properly treated and supervised, they would tend not to go on to the more serious crimes and felonies; that unless an offender did not receive proper treatment and supervision as a juvenile or misdemeanant, or had escaped apprehension for these lesser crimes, the offender would often go on to commit felonies."

The trial judge was given a hearty round of applause by many of the jurors for his remarks at the conclusion thereof.

1. When defendant's case was called for trial that afternoon his counsel first established by questioning the jurors and by admissions of the trial judge the foregoing facts respecting the judge's speech and conduct, and then moved for a mistrial because he did not feel his client could receive a fair and impartial trial before the

assembled jurors in the atmosphere that had been created, through the judge's expression of his personal opinions to the jurors in the courtroom.

2. The statement by the judge that he was speaking as a private citizen, and not as a judge, is so ridiculous as to need no comment. He was the judge; he was in his own courtroom; he was just about to begin the trial of cases; he spoke to jurors who were being paid to attend as jurors. He himself was being paid to preside over that very court as judge. Thus, the judge, in effect, sought to make a grand jury out of the traverse jurors in the State Court of Clarke County.

3. There is no question but that the defendant had no chance whatever of receiving a fair and impartial trial after the demonstration by the trial judge. While his remarks may have been appropriate to a campaign speech for election to the office of judge, once the office has been secured, campaign speeches must be laid aside. They can be very, very offensive to justice and prohibitive of its rendition, as was true in the case at bar.

4. When the motion for mistrial was moved, same should have been granted, unless the judge, in his discretion, had dismissed the jury and called and empaneled an entirely new and different jury who had not heard his speech of the morning.

5. The majority opinion errs—grievously errs—in stating in Division 1, p. 670, in holding: ". . . the jurors *all responded* as being qualified as to freedom from prejudice and bias as between the state and the accused after thorough explanation and questions." (Emphasis supplied.) Not a single juror made such response! *No voir dire oath was ever administered to one single juror!* The law provides for two oaths to jurors, one being provided for in Code § 59-706 (to render a true and impartial verdict) and the *voir dire oath* being provided for in Code Ann. § 59-705. *I repeat that the oath was never administered.* And then the record shows clearly at p. 27 that no jurors actually *responded* to the question the trial judge put to them, that is, "*if any of them were not fair and impartial, please stand, and no one stood.*" That is a far cry from actually *responding* and making any positive statement one way or the other.

6. Then the majority opinion at p. 671 states that "the jurors' questions emphasized that the speech of the judge did not influence them as to this case." But how many jurors were questioned and made this statement? And what was it expected the jurors would say (not under voir dire oath) with the judge sitting on the bench, and who had just moments before reiterated and republished his speech of the morning *by saying he did not apologize for a single word of it.* The Supreme Court of Georgia has held times without number that *cautionary instructions* by the trial court may erase improper questions or conduct, that is, where he instructs the jury not to be influenced by such improper remarks or improper conduct. See *Ivy v. State,* 220 Ga. 699 (3), 703 (141 SE2d 541); *Johnson v. State,* 150 Ga. 67 (1) (102 SE 439); *Ehrlich v. Mills,* 203 Ga. 600 (4) (48 SE2d 107); *Kendrick v. Kendrick,* 218 Ga. 460 (4) (128 SE2d 496); *Purcell v. Hill,* 220 Ga. 663, 664 (141 SE2d 152).

But did the trial judge here instruct the jury not to be influenced by his remarks of the morning? Those remarks included: 1. Criminal activity rose at the fastest rate and the largest numerical increase in history during the year 1974. 2. Two-thirds of those arrested were repeaters. 3. Half of these repeaters had been arrested more than twice. 4. That if misdemeanor offenders could be apprehended and properly treated and supervised they could tend not to go on to the more serious crimes and felonies. 5. Unless an offender did not (sic) receive proper treatment and supervision as a juvenile or *misdemeanant . . .* the offender would often go on to commit felonies.

No indeed! He told the jury during the trial of the *Finch* case that *he was proud of his remarks; that he did not apologize for a single remark; that he stood by every one of them!*

Did he comply with the plain instructions of the Supreme Court as to how he might remove the error of his earlier statement? He did it in his own way, and he did it wrongfully and erroneously. In effect, he made the speech all over again!

7. The majority opinion contends the evidence against the defendant was overwhelming, and *demanded a verdict of guilty and therefore no error made in the case*

*could be reversible.* But in such position the majority is so far off base that it could never get back before being thrown out. No criminal case in which a defendant pleads "not guilty" *ever demands a verdict of guilty.* The majority has cited quite ancient cases to support their position, to wit: *Wheeler v. State,* 42 Ga. 306; *Braswell v. State,* 42 Ga. 609; *Johnson v. State,* 14 Ga. 55. In placing its reliance on these cases, surely the majority has overlooked the recent case by the Supreme Court, by which case we are bound, to wit: *Hall v. Hopper,* written by Justice Hill, 234 Ga. 625, 631 (216 SE2d 839) holding that *stability and stare decisis, and the oldest unreversed full-bench decision of the Supreme Court are no longer controlling.* They ruled "stare decisis" is a basis of argument but "It is not possible, however, to achieve unanimity in every case which reaches this court. When a majority of this court determines that *stability must give way to justice to the prisoner, then justice prevails.* The 'full bench rule' has been repealed." (Emphasis supplied.)

But if *Hall v. Hopper* is not enough, then we respectfully invite the attention of one and all to the recent case of *Carter v. State,* 204 Ga. 242, 246 (49 SE2d 492), where a defendant pleaded "not guilty" to murder on the indictment. Then he took the witness stand and *admitted he was guilty and that he only wished to be given mercy (a life sentence).* His attorney addressed the court and jury and stated that *he, too, in view of his client's statement, wished to say that his client was guilty of murder and only wished to have a life sentence (mercy).* The trial judge charged the jury to determine the punishment, as the defendant had admitted his guilt.

Under the majority opinion and contention in the case at bar no reversible error could be committed in such an overwhelming case of guilt! But what said the Supreme Court? The defendant *could successfully assign error on the court's charge because the court should have charged the jury to decide whether the defendant was guilty or innocent (even in the face of his admission and his attorney's admission that he was guilty) and they must fix the sentence only if he were found guilty.* Surely the majority has given no consideration to this decision by the Supreme Court of Georgia, written by Justice Duckworth,

concurred in by Justices Jenkins, Atkinson, Wyatt, Head, Groves and Hawkins. Justice Bell was ill and did not participate because of illness. Does this case control the point at issue here or does it not? Also, on this point, see *Bird v. State,* 89 Ga. App. 37 (78 SE2d 551), holding that even in the plainest of criminal cases the trial judge cannot direct a verdict of guilty, and if the trial judge cannot do so, of course, the Court of Appeals cannot do so.

8. Code § 81-1009 makes it the duty of the trial judge to rebuke counsel if he makes improper statements in the presence of the jury and by all needful and proper instructions to remove them from the jurors' minds. We have already pointed out that the trial judge here *repeated* the harmful remarks rather than asking that they be not given consideration. See *Ga. Power Co. v. Puckett,* 181 Ga. 386 (182 SE 384); *Ga. Northern R. Co. v. Hathcock,* 93 Ga. App. 72 (3) (91 SE2d 145). And it was held in *Hill v. State,* 14 Ga. App. 410 (3) (81 SE 248) that it is even worse for the judge to make improper remarks than for the attorney to do so; the hurt is greater; it comes from a higher source. Of course, there are certain things that occur—and Finch's case is such a case—where no curative remarks will relieve the hurt, and a mistrial must be granted. See *Terry v. State,* 73 Ga. App. 700, 701 (37 SE2d 823).

9. The point advanced by the specially concurring opinion of the three judges is that the motion for continuance was not properly made, or was not the proper motion. *The motion was made exactly as it should have been, and it was the proper motion to have made. Perhaps a motion for mistrial would not have been in order as no trial had been had, but the motion made was to continue, not for the entire term, but until a qualified jury could be empaneled.* See transcript at p. 22 which states: "Mr. Timmons: Your Honor, at this time I would like to either move for a mistrial as to Mr. Finch or I'd like to ask that his case be continued. I don't feel that there's any way that this Defendant can receive a *fair trial at this term of Court with this panel of jurors."* (Emphasis supplied.) The authorities cited previously by the three specially concurring judges were premised on the idea and situation "where a voir dire oath had been administered." We have repeatedly pointed out here that no voir dire oath

of any kind was ever administered. They cited *Fields v. State,* 190 Ga. 642 (2) (10 SE2d 33); *Hill v. State,* 221 Ga. 65 (1, 2) (142 SE2d 909); *Hagans v. State,* 77 Ga. App. 513 (48 SE2d 700), all of which hold that they are conditioned on the premise that a "voir dire oath" has been administered. That is not the situation here.

But several cases hold that the motion made was the exact one that should have been made, to wit, to move to postpone or continue until other panels of jurors could be drawn from which to select the jury in the case on trial. No challenge to the poll nor to the array is required. See *Fievet v. Curl,* 96 Ga. App. 535 (101 SE2d 181); *Bowling v. Hathcock,* 27 Ga. App. 67 (1) (107 SE 384); *Colonial Pipeline Co. v. Westlake Club, Inc.,* 112 Ga. App. 412, 413 (1) (145 SE2d 669).

10. The trial judge obviously allowed his feeling against defense counsel to enter into the decisions he was making. "Whom the gods would destroy, they first make mad." We come to this conclusion because in the absence of the jury, defense counsel insisted to the court that the jurors were disqualified and that the improper speech by the judge made during the morning, and his reiteration and standing by his remarks in the afternoon, had disqualified the jurors. The trial judge proceeded to raw-hide the lawyer, contending that as the jurors had not stood up when the judge asked them if they were biased or partial, that meant they had said they were fair and impartial (which is a non sequitur—they did not actually say anything but just remained seated) and the judge saw the lawyer was therefore "calling the jurors a bunch of liars" and that he had reflected on the intelligence, *the integrity, and the honesty of the jurors and he hoped no one told the jury the lawyer had said that.* These remarks were uncalled for and unworthy of the high office of judge of the State Court of Clarke County, Georgia. Surely the lawyer had the right to contend the jurors' minds had been swayed and influenced, and he was not thereby calling them liars, or dishonest and men without integrity simply because he stood up for the rights of his client to receive a fair trial by fair and impartial jurors.

And exactly what did the judge mean when he said "he hoped no one told the jurors defense counsel had said

that." Did he fear a lynching or exactly what was behind this rather sinister-sounding remark of the trial judge?

11. One commendation I strongly make of the majority opinion is that they have clearly and strongly disapproved of the speech the trial judge made to the trial jurors during the morning. It was a "convicting" speech — one to be made by the solicitor — not by the trial judge and referee who was under oath to see that *both the state and the defendant received justice and a fair trial.* The applause of the assembled jurors was not unexpected; whenever a judge makes a convicting speech the jurors think he is great — but all lawyers know that his office does not allow him to make that speech. If the judge wishes to do so, perhaps he should run for solicitor and really get into the business of prosecuting. But he should not be allowed to nor applauded for prosecuting so long as he occupies the office of judge!