MONROE HARRISON *v.* THE STATE.

1. CHANGE OF VENUE.—The act of 1876, "to provide for the change of venue by the state in criminal cases," does not affect the provisions of the Code of Criminal Procedure respecting the right of a defendant to a change of venue.

2. SAME.—If, on a change of venue, objection exists to the "adjoining county the court-house of which is nearest to the court-house of the county where the prosecution is pending," the objection must, if relied on, be made to appear in the application for a change of venue; and, to make the objection available on appeal, a bill of exceptions, embodying the application and the facts, as well as the ruling excepted to, must be brought up in the record.

3. SAME — CASE STATED.—After granting the continuance of a murder case, the court below, at the instance of the accused, acted on his application for a change of venue, and ordered the venue to be changed to the county where he was tried and convicted. The order recites that the accused excepted to the county whereto the venue was changed, and, though he took no bill of exceptions, he assigns as error that the order was made after the case had been continued. *Held,* that, as it was at his own instance the application was acted on after the case had been continued, and as he took no bill of exceptions, he cannot be heard to complain of the action of the court. *Held, further,* that the order changing the venue could not be collaterally attacked, in the court to which the venue was changed, by motion to vacate the order or by demurrer or plea to the jurisdiction of the latter court.

4. SPECIAL VENIRE.—The jury law of 1876 does not repeal article 548 of the Code of Criminal Procedure, which provides that a special *venire* shall consist of not less than thirty-six nor more than sixty persons; and, whatever the reasons for the limitations thus prescribed, the courts should respect and obey them.

5. SAME — SERVICE OF COPY.—Before trial for a capital offense, the accused is entitled to one day's service of a copy of the names of the persons *actually summoned* under the special *venire*. Service of the names *drawn* for the *venire* is not a compliance with this provision of the Code.

6. PROOF OF VENUE — TRANSCRIPT.—In preparing a case for this court on

appeal, care should be taken that proof of the venue of the offense, if made at the trial, be affirmatively shown in the statement of facts. The venue being a jurisdictional fact, unless evidence of it appears in the transcript a conviction cannot be allowed to stand.

7. RULES OF COURT. — The attention of judges, prosecuting attorneys, and clerks of courts is urgently directed to the Rules of Court, published in 47 Texas and 2 Texas Court of Appeals Reports, for the manner of setting out in the transcript the proceedings in the trial of a criminal cause, to the end that all technical objections may be obviated.

APPEAL from the District Court of Colorado. Tried below before the Hon. E. LEWIS.

The indictment charged the appellant with the murder of Henry Griffith on October 17, 1876. The deceased, it appears, came to his death about night-fall of that day, on a public road leading from Hallettsville, the county seat of Lavaca County, where the indictment was found. Two bullets were found to have entered the left side of his head, and either of them, according to the medical testimony, was sufficient to cause instant death.

No eye-witness of the killing was produced. The first intelligence of it was communicated by the appellant himself, immediately after its occurrence, to witnesses who lived in the vicinity. According to his statement, as detailed by them, he and the deceased were riding along the road together when three men rode up behind them and shot the deceased. Several witnesses, however, testified that the only horse-tracks to be found at or near the body were those of the horses ridden by the appellant and the deceased. Dr. W. A. East attended the coroner's inquest, and examined the wounds. He testified that they were marked by the powder, and that the skin around them was burned to a crisp.

The deceased and the accused lived in the same neighborhood, and were in Hallettsville together on the day of the killing. The deceased got very drunk there, and left in that condition. There was some evidence of unfriendly

talk between them, but quite a number of witnesses, intimate with both of them, stated that they had always been friends.

The jury found the appellant guilty of murder in the first degree, and there was judgment accordingly. In the opinion of this court will be found all facts underlying the rulings made.

*W. L. Davidson*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

WHITE, J. On August 6, 1877, appellant was indicted by the grand jury of Lavaca County for the murder of one Henry Griffith, alleged to have been committed in Lavaca County on October 17, 1876. When the case was regularly reached for trial, on August 13, 1877, the following proceedings, amongst others, were had, which we copy from the record, viz.:

"This day, this cause being called, the county attorney, appearing on behalf of the state, announces ready for trial, and the defendant, appearing in open court, in person and by attorney, announces not ready, and moves the court for a continuance on the ground of the absence of William Hopkins, witness for defendant, which is granted; and the defendant, being arraigned, enters his plea of not guilty, whereupon came on to be heard the application of defendant, by attorney, for a change of venue in this cause; the same, being heard and considered by the court, is granted. It is therefore ordered, adjudged, and decreed by the court that the venue in this cause is hereby transferred to the District Court of the county of Colorado, and the clerk of this court will forward forthwith to the clerk of the District Court of Colorado the papers in this cause, together with a copy of all orders in said cause, as provided by law. To

which change of venue as to the county of Colorado the defendant excepts," etc.

On September 3d, following, the District Court of Colorado County ordered a special *venire* of *seventy-five* men to be summoned to try the case, and the clerk, in the presence of, and under the supervision of, the court, drew seventy-five names of jurors from the list returned by the jury commissioners, to constitute the said *venire* as ordered. A copy of this list was made out by the clerk and served upon the defendant by the sheriff before the special *venire* was summoned. When the case was reached, upon the day on which it was set for trial, the defendant presented his plea to the jurisdiction of the court, based upon the following grounds, viz. :

" 1. The record shows that, in the application for a change of venue, the same objections to Lavaca County existed in this county, to wit, Colorado County.

" 2. The record shows that the change of venue was acted upon and granted subsequent to this cause being continued by order of the court, as appears of record in this cause."

This plea to the jurisdiction was overruled, and the action of the court in overruling it is one of the errors assigned.

Our present Constitution provides that " the power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law ; and the Legislature shall pass laws for that purpose." Const., art. 3, sec. 45. It is believed that the act entitled " An act to provide for the change of venue by the state in criminal cases," approved August 21, 1876 (Gen. Laws Fifteenth Legislature, 274), was not intended to affect the laws previously existing, conferring the right to apply for a change of venue upon the defendant for the reasons and in the manner stated in the statute. Pasc. Dig., arts. 2904–3004, inclusive.

Article 2998, Paschal's Digest, provides that, " upon the grant of a change of venue, the criminal cause shall be removed to some adjoining county the court-house of which is nearest to the court-house of the county where the prosecution is pending, unless it be made to appear in the application that such nearest county is subject to some objection sufficient to authorize a change of venue in the first instance." The objection " must be made to appear in the application." In this case the application is nowhere set out as part of the record, and we are not apprised of the grounds upon which it was based. In the absence of the motion showing the fact that objections to Colorado County were urged, similar to those which procured the change from Lavaca, and in the absence of a bill of exceptions presenting the facts, by which means the defendant might also most properly have preserved the point for revision, every presumption will be indulged in favor of the correctness of the action of the court.

With regard to the second ground set out in the plea to the jurisdiction — that the change of venue was granted subsequently to the continuance of the cause — there are two reasons why the plea is not good. The first grows out of matter apparent upon the record as quoted above, and the other is matter of law. A fair construction of, and inference from, the language of the order changing the venue is that the application was heard and determined at the instance and upon the motion of the defendant himself, after the continuance was granted. The recital is, " and the defendant, being arraigned, entered his plea of not guilty ; whereupon came on to be heard the application of defendant, by attorney, for a change of venue in this cause." If the defendant did not procure the court to act upon the application, or if he intended to resist the action of the court upon it after, and because of, the continuance, he should have then presented his objections, and, upon being overruled,

should have saved a bill of exceptions; neither of which he did. The record recites that, "as to the county of Colorado, the defendant excepts," though it does not appear why he excepts, and that special exception, appearing as it does, tends to confirm our conclusions, and to exclude the idea that he was excepting generally to the action of the court in changing the venue.

Again, the judgment of the District Court of Lavaca County, removing the cause to Colorado County, being the judgment of a court of competent jurisdiction, could not be collaterally attacked in the District Court of Colorado County, for irregularity, or as having been improperly granted, either on a motion to set aside, or by demurrer, or plea to the jurisdiction of the court. *Wheeler* v. *The State*, 42 Ga. 306. The plea to the jurisdiction was properly overruled.

With regard to the special *venire* two points are specially urged in defendant's bill of exceptions: First, that it was not a legal *venire;* and, second, that defendant was not served with the names of the persons summoned upon said special *venire*.

Our statute provides that, "when there is pending in any District Court a criminal action for a capital offense, the district attorney may, at any time after indictment found, on motion, obtain an order for summoning any number of persons, *not less than thirty-six nor more than sixty*, as may be deemed advisable, from whom the jury for the trial of such capital case is to be selected." Pasc. Dig., art. 3016. And, if the list of persons summoned is exhausted by challenges or otherwise, or do not attend, talesmen are summoned, upon verbal order of the court, until the jury is completed. Pasc. Dig., art. 3030. These provisions of the Code are not repealed by the jury law of 1876. Gen. Laws Fifteenth Legislature, 78. The 23d section of this act, it is true, provides a special mode for the selection of a special

*venire*, and supplying the deficiency therein, and is not further different from the statutes mentioned.

We cannot imagine why the court, with the statute providing that a special *venire* should consist of not less than thirty-six nor more than sixty persons, should have drawn and ordered seventy-five to be summoned. If some extraordinary emergency existed, impelling the court to act independently of the plain letter of the law, certainly the record should at least disclose some evidences of it. We have searched the decisions of the courts of this country for a precedent upon the point — no authority being cited by the counsel on either side — and have found but one which is at all analogous to it.

In Florida, it seems, they have a statute relating to jurors which requires that the county commissioners of each county shall make out a list of 300 names of persons qualified to serve as jurors, from which list the grand and petit jurors are to be drawn. In the case of *Gladden* v. *The State* it was shown, upon the challenge and motion to quash, that the county commissioners had furnished to the clerk a list of three hundred and *two*, from which list the jury was drawn which tried and convicted the defendant of murder. Randall, C. J., delivering the opinion of the court, says: "However unimportant the discrepancy may seem, we consider that the appellant had a right to demand a strict compliance with the law in the drawing and impaneling of a jury. Irregularities, however slight, when they show a departure from the provisions of law in respect to the selection, summoning, and impaneling of jurors, are proper grounds of objection to the jury, and form grounds of challenge to the array." *Gladden* v. *The State*, 13 Fla. 626.

It is not for us to speculate as to the reason for limiting a special *venire* to "not less than thirty-six nor more than sixty persons." Suffice it to say that, until the law-mak-

ing power of the state, which established, sees fit and does repeal or change it, district judges would do well to keep within the limits of the provision, since it is so easy to do so, and thereby save any controversy upon the legality or propriety of questions of practice relative thereto.

Upon the second objection the statute also provides that "no defendant in a capital case shall be brought to trial until he has had one day's service of a copy of the names of persons summoned under a special *venire facias,* except where he waives the right," etc.    Art. 3022.    The bill of exceptions reserved by defendant, on this point, shows that, as soon as the special *venire* was drawn, the clerk made out a copy, and the sheriff served it upon the defendant before the jurymen were summoned; but it is also stated that, after the jurymen were summoned, a copy of the names of those summoned was served upon the counsel of defendant.

Article 3022, Paschal's Digest, has not been repealed or altered by the acts of 1876, with reference to the service upon defendant, and it would not be a compliance with the requirements of this statute to make out and serve defendant with a copy of the names drawn for the special *venire* before the persons were summoned; but the defendant is entitled to a copy of the names of those actually summoned, for it is of those summoned that the jury are to be selected who are to try the case.

But, in addition to the questions above discussed, we think the most serious objection raised to the validity of the judgment is that the venue is not proven.    As has been said time and again, the venue of an offense is a jurisdictional fact which must be proven as alleged, and, unless proven and the proof shown affirmatively in the record, a judgment of conviction in a criminal case will not be permitted to stand.    *Jack* v. *The State, ante,* p. 72.    It is not enough, in the trial of a criminal case, that from the record and all the circumstances in the case there

may be strong grounds of inference that the prisoner was tried and convicted by a proper tribunal. The record must show that he was tried in a court having jurisdiction of the offense. *Boyd* v. *The State*, 6 Coldw.

And we here take occasion to call the attention of district judges, county and district attorneys, and clerks to the rules adopted recently at Tyler, which are to be found in the second volume of the Texas Court of Appeals Reports, for the mode and manner of showing by the transcript the various steps necessary to be taken on the trial of a criminal case, and the order in which the prominent features of the case must be made to appear in the transcript of the record. It requires but little care, if these rules are only observed, to make out a case and a record which, to say the least of it, will be free from most of the technical objections so frequently and so successfully urged in the reversal of criminal cases.

Now, in the case at bar, the nearest approach to the proof of venue is in the testimony of the following witnesses : Rhodes says : " I was at home the night of the killing. Harrison, the defendant, came to my house, situated on the east of, and near, Mixon's Creek, in Lavaca County, on the Columbus and Hallettsville Road, about seven miles from Hallettsville." Even admitting that the language here used establishes that the witness lived in the county of Lavaca, that fact would not prove or show that the murder was committed in Lavaca County. Another witness says : " The body lay on the side of the big road leading from Rhodes' Mill to Hallettsville, and about five miles from Hallettsville ; " and though it were so easy and natural, if it were so, that he should have said that it was in Lavaca County, yet he nowhere says it. Knox, another witness, says : " I lived on the Mitchell place, on the road leading from Hallettsville to Rhodes' Mill, the road on which the deceased was killed, about four miles from Hallettsville,

and one mile and a quarter from the place of the killing ;'' but whether in Lavaca or any other county in Texas he does not tell us.

Considering the number of witnesses sworn and examined on the trial of this case, and the particularity with which they have, the most of them, stated the locality in which they lived, and the distance from the dead body and from Hallettsville, and the different roads leading thereto, and it does seem almost incredible that the county in which all that was testified about occurred should not have been proven.

For the reasons stated, and especially because the venue of the offense is not proven, the judgment is reversed and the cause remanded.

*Reversed and remanded.*