## 72356. JOHNSON v. THE STATE.
### (345 SE2d 123)

BIRDSONG, Presiding Judge.

Bobby Johnson, the defendant, appeals his conviction of vehicular homicide in the first degree. Johnson, a construction worker, had been ill for a couple of days, but on the morning of September 21, 1984, felt like going to work. About 9:00 a.m., Johnson went to his boss and told him he felt "dizzy and light-headed." His boss gave him permission to lie down in his car and he took two "Anacins." Johnson said his fever broke about 1:30 p.m. and he returned to work. His boss confirmed these facts. Johnson left work around 4:30 p.m. and stopped on his way home and bought gas and a six-pack of beer. He drank one beer but does not remember opening a second beer. He testified that he stopped at a pawn shop at Oakdale and Bankhead Highway and purchased a nail apron but shortly after leaving there, he remembers driving at the top of a hill and the next thing he remembers is being questioned by a police officer following his accident.

Richard McKinney was driving on Bankhead Highway at about 5:15 to 5:30 p.m. on the afternoon of September 21, 1984. At Bankhead and Oakdale, another car going in his direction pulled off of the road into a flea market and drove around the red light and kept going in the same direction. He followed that car up Bankhead, and "as we got up to the top of Bankhead Hill, the man lost control of his car and his head fell back. . . . The car was just kind of swaving [sic] in the road." By "swaving," he meant "moving from side to side." Then the car left the road and went into a parking lot in front of an Exxon gas station, Nix's Construction Company, Alphin's Wholesale Jewelry, and Griff's Body Shop. There was no evidence that Johnson applied the brakes of his car. His speed in the parking lot was estimated by one person at "thirty-five to forty," and by another as "over forty, well over forty" miles per hour. Johnson's car struck the corner of the building housing Griff's Body Shop, glanced off and then struck a parked car, pushing it into another car. Griff Buice was working on one of the cars and was crushed between them. Death was almost instantaneous. Bobby Nix was in his office when he saw a "blur" pass in front of him. Then he heard an explosion when Johnson's car "had come to a stop when it hit, for three, four seconds, and when we were out there it started to accelerate again in reverse, just spun right around. The tires was [sic] smoking; the car looked like it was on fire, and it just spun right around and then landed right in front of Alphin Jewelry. . . ." There was a trail of fluid from the point of impact between Johnson's car and the car in front of Griff's, to the point at which Johnson's car came to rest against a post in front of Alphin's Jewelry. Nix ran to Johnson's car and saw that the driver "was unconscious, back like this [indicating], and . . . there was [sic] beer

cans on the seat and some in the floor, and I looked down and I said, Aw, what the heck; he's drunk. So I just backed myself out."

Officer Meeks responded to the accident and saw the beer cans in the vehicle and asked Johnson if he had been drinking, and Johnson told him he had one beer. Johnson could not say his ABC's correctly, nor could he touch his nose with his finger in the "correct manner," and he swayed when he stood straight. Officer Kelley inspected the interior of Johnson's car and found four unopened cans of beer, one empty beer can, and one partially filled can of beer. The partially filled can was sitting in an upright position on the driver's side of the floorboard next to the area where the driver's left leg would be. Because of the impact of defendant's car with the building, with another car, and subsequently striking another building while in reverse gear, he considered it "very unusual" for the partially filled can of beer to be sitting upright. He "felt around" the floorboard carpet, the transmission hump and the front seat. Everything was dry. "There was [sic] no stains and no moisture on either the seat or the carpet that I could find." Officer Langley also investigated this incident and observed the fluid trail from the point of impact at Griff's to defendant's car lodged against a support post in front of Alphin's. The post was between the left front tire and the car's fender, "and this is what caused the vehicle to be immobile from this point on." Johnson appeals his conviction. *Held*:

1. Considering the evidence detailed above, in the light most favorable to the verdict, a rational trier of fact could have found Johnson guilty beyond a reasonable doubt of the offense charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Stinson v. State*, 244 Ga. 219 (4) (259 SE2d 471).

2. The defendant contends the trial court erred in giving a pretrial charge to the jury in the form of an orientation as to their duties and how the trial would proceed. During the orientation, the court advised the jury that a defendant could not be brought to trial on a felony without first having been indicted by a grand jury, and that "[g]rand jurors do not try criminal cases; their investigation is ex parte, that is, they ordinarily only hear from the witnesses for the state, and if after hearing from them they are convinced there is sufficient evidence that a crime has been committed to warrant a trial before a trial jury, it is the duty of the grand jury to indict . . . in order that he or she may be brought to trial so that under admissible competent evidence in open court the guilt or innocence of the accused will be determined."

Defendant alleges this is a misleading statement which was confusing to the average lay person, and in essence shifted the burden of proof from the state to the defendant. We do not agree. During the same pretrial orientation, the court advised the jurors of the pre-

sumption of innocence of the defendant, that the burden of proof was upon the state and the state had to prove each essential element of the offense beyond reasonable doubt, and that the indictment was not evidence and was not to be considered by them as evidence.. In the charge of the court to the jury at the close of the evidence, the jurors were again instructed on the presumption of innocence, the burden of proof, the rule of reasonable doubt, and the "indictment does not constitute evidence, nor does the fact that a grand jury has returned an indictment against the defendant constitute any evidence or inference of guilt. It is merely the manner in which the charge is brought before the court for trial. . . ."

This court, in *Bearden v. State*, 159 Ga. App. 892 (3) (285 SE2d 606), referred to the fact that the American Bar Association, in its minimum standards for criminal justice, recommended juror orientation, and we found no error where the orientation did not convey or intimate any opinion of the trial judge, and did not lessen the sense of responsibility of the jurors. The charge given in the instant case was fair and correct. See *Clark v. State*, 141 Ga. App. 257 (1) (233 SE2d 246); *Decker v. State*, 139 Ga. App. 707 (4) (229 SE2d 520). We find no basis for an allegation of possible confusion to, or that the charge given could be misleading to, the average juror. This enumeration is without merit.

3. The failure of the trial court to charge the jury on the lesser included offense of vehicular homicide in the second degree is enumerated as error. The record does not reflect any request to charge on lesser included offenses presented to the trial court. In the absence of a written request, it is not error for the trial court to fail to charge on a lesser included offense. *State v. Stonaker*, 236 Ga. 1 (4) (222 SE2d 354), cert. den. 429 U. S. 833.

4. The defendant contends he was denied a fair trial because he did not have effective assistance of counsel during his trial. This claim is based on two grounds: (1) counsel did not introduce the results of defendant's blood alcohol test, and (2) counsel failed to request a charge on a lesser included offense.

The U. S. Supreme Court has directed how state courts will consider claims of ineffectiveness of counsel. First, an accused is entitled to be assisted by an attorney to insure that the trial is fair, and this "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674). "The benchmark for judging any claim for ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. The defendant has the burden of showing counsel's representation fell below an objective standard of reasonableness. Hence, a defendant must first show his counsel's performance

was deficient, and then must demonstrate how the deficient performance prejudiced the defense. A reviewing court must indulge "a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy . . . [and] that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . . An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. Thus, a defendant must "affirmatively prove prejudice. . . . It is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

The indictment charged defendant with vehicular homicide by violating OCGA § 40-6-390 — reckless driving. Johnson was not charged with driving under the influence of alcohol or drugs. The state was not attempting to show defendant was intoxicated, but was reckless, and the consumption of beer was important only as to the method of consumption, i.e., drinking while driving. Bankhead Highway has a slight left curve in front of the area where Johnson's car left the road. If his car had continued straight, rather than proceeding around the slight left curve on Bankhead, Johnson would have gone into the parking area where this incident occurred. We do not have a transcript of closing arguments, but it is evident the state was contending Johnson was drinking beer while driving, and that when his head tilted back just prior to his car leaving the road, he was consuming beer. It is also clear from defendant's counsel's questions that the defense was attempting to show that Johnson had "blacked-out" just prior to this accident, because of his illness, a fever and the combined effects of taking two "Anacin" tablets that morning, and one "Goody's" headache powder that afternoon, and consumption of one beer.

Johnson admitted that when he drove and drank beer, he placed the can between his legs. This would explain why the partially filled can of beer was upright in the front left side of the car following the accident and why the police officer could not find a wet spot or beer stains. However, if the can was removed from between Johnson's legs and placed on the floorboard after the incident, this would show that Johnson was not unconscious. There was evidence that the defendant's car went into reverse following the impact with the car which killed Buice. And, that during the period when the car was in reverse,

the engine had accelerated and the tires were "smoking." The car could be placed in reverse only by pulling the gear shift lever toward the driver. Further, after being placed in reverse and striking Alphin's Jewelry, the car could not move forward because a post was lodged between the front left wheel and the fender of the car. Whether there was an attempt to flee from the scene was an issue for the jury. *Fredericks v. State*, 172 Ga. App. 379 (2) (323 SE2d 265). Although there was the testimony of one witness that he thought defendant was drunk, and a police officer said defendant could not stand without swaying, or properly recite his ABC's, such mental confusion could have been the result of the collision.

In the instant case, defendant's counsel was relying on the trial tactic of accident, following the period in which the defendant had passed out because of his illness and medication, and was going for an all-or-nothing verdict. The state was not attempting to show the defendant was intoxicated, but only that the consumption of beer was important because defendant was drinking while driving. In this context, we do not view counsel's failure to place in evidence the blood alcohol report, or the failure to request a charge on a lesser included offense as demonstrating ineffectiveness. The mere fact that appellate counsel would have tried the case differently does not show ineffectiveness. *Solomon v. State*, 247 Ga. 27, 29 (277 SE2d 1). Errors of judgment and trial tactical errors do not constitute ineffectiveness. *Bishop v. State*, 155 Ga. App. 611, 615 (271 SE2d 743).

The evidence does not show there is a reasonable probability that but for counsel's failure to place in evidence a favorable blood alcohol report, or to request a charge on a lesser included offense, that the result of the proceedings would have been different.

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED MAY 5, 1986.

*Roger L. Curry*, for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, James F. Morris, Assistant District Attorneys*, for appellee.