A90A0233. EDMONDS v. THE STATE.
(395 SE2d 566)

McMURRAY, Presiding Judge.

Defendant was indicted for violating Georgia's Controlled Substances Act (possession of cocaine with intent to distribute), driving under the influence of alcohol and obstructing a law enforcement officer.

On October 8, 1988, defendant's case was called for trial. After voir dire and while the State's attorney and defense counsel were outside the presence of the jury panel making "final determinations as to which jurors to strike . . . ," the trial court began "answering general questions raised by members of the jury panel . . . ." The trial court's remarks were not being taken down by the official court reporter and, when defense counsel returned to the courtroom and noticed this omission, he immediately requested that the "remaining comments be recorded. . . ." The official court reporter complied and the following was recorded:

"THE COURT: . . . the plea bargain process has been approved and recognized and is recommended by the Supreme Court as an expeditious way of disposing of cases. Now, in a trial we have a two part

— two parts in any criminal trial. Those of you who are selected on the jury for the trial of this case or any other case, we have two phases: first is the guilt/innocence phase. The guilt or innocence of the defendant is determined, and that's what the trial jury does. The jury determines the guilt or innocence. Following that, and if the person is found guilty, then you move into the sentencing phase. Now the jury doesn't have anything to do with that, the Judge imposes the sentence. Only in a death penalty case does the jury have anything to do with sentencing, but the jury determines the guilt or innocence. If found guilty, then we move to the sentencing phase and the Judge determines that.

"Now, whether or not a person has a prior criminal record, whether or not they have committed any criminal offenses in the past, has no bearing whatsoever on the trial for which the person — for the charges for which the person is being tried. Now there are some exceptional circumstances to that; if it's a similar transaction, similar in occurrence, time of occurrence — and there are some situations where prior offenses or prior conduct might be admitted, but basically the fact that a person may or may not have a prior criminal record has no bearing on the guilt or innocence of the charges on which he is being tried. Only after he has been found guilty by the jury, if the jury finds him guilty, does that then become a part of the case, and that is for the Judge's benefit in sentencing the person. As far as the jury is concerned, they have nothing to do with that.

"Going back to the plea bargaining now, that I was telling you about, I got off on the other. Once the person has entered his plea of guilty, that completes the guilt/innocence phase of the trial, even though it's without a jury. He just plead guilty, so now he is found guilty; that part of the trial is over. We then move to the sentencing phase. At that point, then, the Judge has the right to see his prior record, to see whether he has any previous criminal offenses, and what they are, when it was, and all the circumstances surrounding that. The Judge, as I said, has a right to reject the plea bargaining agreement. If, for example, the State and the defense agree on a plea bargain for burglary, and five years probation is going to be the recommended sentence, when he enters the plea of guilty the State recommends five years probation. That's all according to their agreement, everybody's done what they were supposed to do or agreed to do and the Judge looks at the record, and the fellow has been in prison four times for armed robbery and been in prison three times for burglary, some other type situations like that; folks, ain't no way the Judge is going to accept five years probation on a fellow that's got that kind of a record, so the Judge says, 'I'm not going to accept that agreement', and we're back to square one. If, after looking at his prior record, the Judge feels that the agreed upon sentence is appropriate

and in line, and he accepts it, he sentences him to whatever that agreement was, and that disposes of the case.

"That's how the plea bargain process works. As soon as we finish picking juries for the cases to be tried today, we will begin taking pleas this afternoon, and we have, I think, about forty cases that have announced they will be disposed of by plea, through the plea bargaining process. So that's what we'll be doing when you all leave when we get through picking juries, we'll still be here disposing of other cases in that manner. All right, that's a little, real quick, ten minute primer on plea bargaining and how it works. Any other questions?"

Defense counsel then stated that he "would like to reserve [his] right for later argument on a motion to dismiss the jury panel based on [the trial court's] comments on guilt or innocence." The trial court informed defense counsel that he could "make that motion . . ." and jury selection continued. After the jury was impaneled, but before it was sworn, defense counsel proceeded as follows:

"[DEFENSE COUNSEL]: There is one other matter I want to make sure the record is perfected on. Prior to jury selection in this case I made a motion to dismiss the panel regarding statements that the Court made at the time the State and defendant were excused from the courtroom. Judge, I don't know what all was said, and I hate to bring this up as an issue, because I have a lot of respect for you. But I feel that I have a duty to my client to assure him that the words spoken to the jury will not in any way prejudice or influence this jury against him. I don't know what was said. I understand that part of it was not transcribed, because when I came back in I signaled to [the court reporter] and I understand that he began transcribing at that time. He is shaking his head up and down that's correct. Judge, something quite frankly I'm scared to bring up to you, I have a lot of respect for you, and I don't want you getting down on me for doing it, but I've got to tell you, I think that's wrong.

"THE COURT: All right, sir, you have that right. Make your motion.

"[DEFENSE COUNSEL]: I am moving to dismiss the jury panel on the ground the Court communicated with them outside the presence of counsel. Counsel was excused from the room. . . . I further make this motion on the basis of the statements that I did hear the Court make as to the plea bargaining system, and as to the record of an accused not being able to be brought into evidence. . . . My concern is that this jury panel sitting out here prior to the time that they were selected as jurors could infer, from your statements, which I'm sure were not intended for this purpose, and I don't accuse you of intending them for this purpose, that, 'Here we are about to get selected on this jury, the Judge has just told us that the defendant's prior record is not admissible in evidence. Why is he telling us this at

this time? Is he sending us a message? Hey, this guy has got a prior record.' Now, Judge I don't want to get on your bad side . . . [b]ut I just feel that that is impermissible, and I have to continue my motion that it impermissibly tainted this jury panel. I don't think a motion for mistrial is appropriate. I think the proper procedure is to move to dismiss the panel on three grounds, the fact that I can't tell the client what was said, because we weren't in here and the record doesn't contain it. On the grounds you told them about the plea bargaining — and I don't remember if you told this or not, to tell you the truth, I'll try to remember it — but most criminal cases end up being resolved by plea bargaining, and that, they can infer from that, Judge, that most criminal defendants are guilty. I think that's an improper statement to give to them, because it could allow them to infer that. And that, in affect [sic], could be a comment from one on the judicial system to people who were to come down here charged with a crime. And thirdly as to the stuff about the defendant's prior record at the time that we were about to select the trial jurors in this case."

The trial court denied defendant's "motion to dismiss" the jury panel and, in so doing, informed defense counsel that the court's comments to the jury panel were "just an explanation to the jurors as to the plea bargain process and how it is utilized, and how it has been sanctioned, approved and recommended by the Supreme Court of the United States." The trial court further explained that the remarks were made in a "general context" and that "there was no reference made at any time to this particular defendant." The trial court then advised defense counsel that "[i]f you, at a later time, within the proper time frame, elect to appeal from the denial of your motion, we will perfect the record as to what comments I did make to the jury. I could take the time right now and tell them to you, because I've done it for six years in six different counties, and it's almost a tape recorded dialogue that I have with the jury. But we will perfect the record. I don't want to take the time now to do it. But, at such time as you would choose to appeal from my ruling denying your motion, we will perfect the record as to what was said, to the best of my recollection. I can pretty well tell you what it was, because as I said, I've done it dozens of times in the last six years." (The trial court's unrecorded comments to the jury were not made part of the record.) A jury was then empaneled and sworn and the trial proceeded. Defendant was found guilty of violating Georgia's Controlled Substances Act (the lesser included offense of possession of cocaine), driving under the influence of alcohol and obstructing a law enforcement officer. This appeal followed the denial of his motion for new trial. *Held*:

1. In his first enumeration, defendant contends "[t]he trial court's recorded remarks to the jury panel, outside the presence of counsel, were improper and reversible error." More specifically, de-

fendant argues that the trial court's remarks regarding the inadmissibility of a defendant's prior criminal record and remarks regarding the "40 cases [that] would be disposed of by guilty pleas that afternoon" impermissibly left the jury with the impression "that a majority of criminal defendants are guilty." In opposition, the State argues that defendant *acquiesced* to the trial judge's comments by failing to press the court for an immediate ruling on either his "motion to dismiss" the jury panel or his motion to reserve argument on the motion. The State also argues that defendant's failure to challenge the poll, move for a continuance or question the prospective jurors as to the impact of the trial judge's comments resulted in a *waiver.*

First, we find no acquiescence. Defense counsel promptly requested the court reporter to take down the trial court's remaining comments; he immediately reserved his "argument on a motion to dismiss the jury panel . . ." and, most importantly, he argued his point before the jury was sworn. See OCGA § 15-12-167. Next, we turn to the issue of waiver. The usual response to improper remarks made prior to a jury being sworn is a challenge to the poll or a motion for continuance.[1] *Hill v. State,* 221 Ga. 65, 66 (1, 2) (142 SE2d 909). However, failure to respond with these specific objections will not always result in a waiver. "[I]t is an elementary rule of pleading that substance, not mere nomenclature, controls. [Cits.]" *Birt v. State,* 256 Ga. 483, 484 (3), 485 (350 SE2d 241).

In the case sub judice, defense counsel did not respond to the trial court's comments to the prospective jurors by saying, "I challenge the poll" or "I move for a continuance." Instead, he made a "motion to dismiss the jury panel. . . ." The object of this motion was clear. *He wanted a full panel of prospective jurors who had not been tainted by the trial court's pre-trial briefing.* Under these circumstances, we find no waiver.

Turning now to the substance of defendant's complaint, we recognize that juror orientation, whether it be through preliminary instructions to the entire array or through responses to questions raised by members of a panel, serves a useful function.[2] "Jurors are generally unfamiliar with the mechanics of a trial, civil or criminal, and

---

[1] "There are two general kinds of challenges to a jury panel: (1) Challenge to the array and (2) challenge to the poll. [See *Bryan v. State,* 124 Ga. 79, 80 (52 SE 298).] Challenges to the array go to the form and manner of making up the entire panel without regard to objection to the individual jurors. A challenge to the poll is directed to an individual or individuals who make up a panel." William W. Daniel's Georgia Criminal Trial Practice (1989 ed.), § 18-7, p. 512. A challenge to the array must generally be made in writing. OCGA § 15-12-162. See *Mincey v. State,* 180 Ga. App. 263 (349 SE2d 1), affirmed *State v. Mincey,* 256 Ga. 636 (353 SE2d 814).

[2] See American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury, § 3.1.

may enter upon their duties with little or no idea as to how an actual trial is conducted, save those impressions garnered from television. It is quite helpful to the court, counsel, and even the parties, for the jurors to be reasonably well-informed about their duties and the conduct of a trial. . . . Where . . . such a charge is informative, accurate, and not prejudicial to the rights of the parties, then it is to be encouraged, not discouraged." *Decker v. State*, 139 Ga. App. 707, 708 (4), 709 (229 SE2d 520). However, "it is important that nothing take place in the presence of the panels which might cause the jurors to form an opinion as to the guilt or innocence of any defendant. [Citations omitted.]" William W. Daniel's Georgia Criminal Trial Practice (1989 ed.) § 18-3, pp. 509, 510.[3]

We do not question the sincerity and good intentions of the trial court in seeking to enlighten the jury panel by giving the complained of preliminary instructions in the case sub judice. However, under the particular facts and circumstances in the case sub judice, the trial court's preliminary remarks regarding plea-bargaining and the admissibility of a defendant's prior criminal record were inappropriate.

Consequently, we cannot find it highly probable that the error committed by the trial court's broad reference to criminal defendants did not impair the prospective jurors' view of "this particular defendant," and did not contribute to the guilty verdict. See *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869). Under different circumstances, and at another place and time, it would be commendable for familiarizing instructions to be presented to enlighten and educate citizens in the operation of this State's judicial system. However, we feel that it was inappropriate for the trial court to have done so, in the manner conducted, to a panel of prospective jurors from which a jury was in fact selected to try the defendant in the case sub judice. Consequently, the trial court erred in denying defendant's "motion" (to empanel another jury). Compare *Collins v. State*, 73 Ga. 76, 77 (3) (1884); *Johnson v. State*, 179 Ga. App. 21, 22 (2) (345 SE2d 123); *Bearden v. State*, 159 Ga. App. 892, 893 (3) (285 SE2d 606); and *Finch v. State*, 138 Ga. App. 668 (226 SE2d 779).

2. Defendant's remaining enumerations are either rendered moot

---

[3] Preliminary instructions which are useful in informing prospective jurors of their duties and responsibilities and which place the criminal trial process in a proper perspective can be found in Suggested Pattern Jury Instructions, Volume 2, Criminal Cases, by the Council of Superior Court Judges of Georgia, pp. 2-8. These optional preliminary jury instructions explain: (a) the function of the indictment, (b) the presumption of a defendant's innocence, (c) the State's burden of proof, (d) the functions of the court and counsel, (e) the function of the jury as sole judges of the facts and the jury's responsibility to apply the law, as given by the court, to the facts, (f) matters concerning credibility, (g) the importance of an impartial jury and the function of voir dire in achieving this goal, (h) criminal jury trial procedure, and (i) terms which will be used by the court and counsel.

by our holding in Division 1 or present error which is unlikely to occur upon retrial.

*Judgment reversed. Carley, C. J., and Sognier, J., concur.*

DECIDED MAY 17, 1990 —
REHEARING DENIED JULY 3, 1990 — CERT. APPLIED FOR.

*Hackel & Hackel, Thomas M. Hackel,* for appellant.
*Harry D. Dixon, Jr., District Attorney, Richard E. Currie, Assistant District Attorney,* for appellee.