A91A1818. BOWDEN v. THE STATE.

(415 SE2d 527)

CARLEY, Presiding Judge.

Appellant was tried before a jury and found guilty of driving under the influence of alcohol and giving false information to a police

officer. He appeals from the judgments of conviction and sentences entered by the trial court on the jury's guilty verdicts.

1. Four days prior to the selection of appellant's jury, the trial court conducted a preliminary juror orientation session for the entire array. The trial court's refusal to allow appellant's attorney to be present during this juror orientation session is enumerated as error.

"[J]uror orientation, whether it be through preliminary instructions to the entire array[, as here,] or through responses to questions raised by members of a panel, serves a useful function." *Edmonds v. State*, 196 Ga. App. 190, 194 (1) (395 SE2d 566) (1990). See also *Johnson v. State*, 179 Ga. App. 21, 23 (2) (345 SE2d 123) (1986); *Mention v. State*, 171 Ga. App. 116 (1) (318 SE2d 765) (1984); *Beardon v. State*, 159 Ga. App. 892, 893 (3) (285 SE2d 606) (1981). The instant preliminary juror orientation session was recorded and no comment made by the trial court therein has been specifically enumerated as erroneously uninformative, inaccurate, or prejudicial. Compare *Edmonds v. State*, supra at 193 (1). Appellant's enumeration of error asserts only that the absence of his counsel mandates a reversal. However, the preliminary juror orientation session was not a "stage of the trial" or a "critical stage of the proceedings," such as would require reversal based *solely* upon the absence of appellant or his counsel. See *Gilreath v. State*, 247 Ga. 814, 824 (3) (279 SE2d 650) (1981); *Stone v. State*, 177 Ga. App. 750, 751 (1) (341 SE2d 280) (1986). See also *Commonwealth v. Katz*, 10 A2d 49, 52-53 (Pa. Super. 1939); *Goldstein v. State*, 150 A2d 900, 905 (Md. App. 1959); *People v. Lopez*, 197 P2d 757, 759 (Cal. 1948). Accordingly, this enumeration of error is without merit.

2. Appellant's blood-alcohol level was shown to be .06. On cross-examination, the law enforcement officer who had tested appellant's blood-alcohol level was asked whether this was "a low test compared to those normally given to people who are charged with DUI." The State's objection on the ground of irrelevancy was sustained and the officer was not allowed to answer the question. This ruling is enumerated as error.

The issue for jury resolution was whether appellant was "[u]nder the influence of alcohol to the extent that it [was] less safe for [*him*] to drive. . . ." (Emphasis supplied.) OCGA § 40-6-391 (a) (1). Obviously, the test results of persons *other* than appellant would shed no light on this issue. Any mere disparity between appellant's test results and those of others charged with DUI would not be reflective of the differing effect that a given blood-alcohol level might have on the ability of different individuals to drive safely. A blood-alcohol level greater than .06 might not render one individual a less safe driver, whereas a blood-alcohol level below .06 might render another individual a less safe driver. As with *any* driver whose blood-alcohol level

was within the parameters of OCGA § 40-6-392 (b) (2), appellant's test result raised no presumption that he was thereby rendered a less safe driver and was but *one* factor to be considered by the jury in making that determination. Since the test results of persons other than appellant would not be probative of any relevant issue in the case, it was not error for the trial court to have sustained the State's objection to the question. See generally *Hunter v. State*, 191 Ga. App. 769, 771 (382 SE2d 679) (1989).

*Judgments affirmed. Judge Arnold Shulman concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

Although I concur in Division 2, I do not fully concur in Division 1.

Defendant's counsel attempted to sit in on the jury orientation conducted by the judge at the beginning of the trial in the room which was being used as a jury assembly room. He simply wanted to listen to the proceedings, as out of this group the defendant's jurors would be chosen. The judge advised counsel that the juror orientation session was not open to the general public and precluded him from remaining. There is no explanation of why this very important and influential part of jurors' service, when they meet the judge and are given general instructions which will guide their service, is or should be closed.

Considering the matter from the perspective of the public and of the persons who are to be tried, as well as the effect on fairness which open proceedings serve to achieve, jury orientation should not be conducted behind closed doors. The concern that court communications with juries be open has been expressed by both of our appellate courts. See, e.g., *Forehand v. State*, 188 Ga. App. 527 (1) (373 SE2d 382) (1988); *Berryhill v. State*, 235 Ga. 549, 554 (12) (221 SE2d 185) (1975).

In this case the orientation was reported, so defendant was able to ascertain whether anything occurred which he thought was prejudicial to him. He asserts that he has the sheer right to have his counsel (not himself) present during this proceeding, but we find no precedent for this proposition as it has not been regarded as a critical stage of the proceedings against him.

He also asserts that the transcript, which he was provided with in lieu of his counsel's presence, shows that the court infected the jurors by putting a premium on speed superior to the values of correctness and justice. The court told the jurors that there were 26 cases to be called during this criminal trial week and that "[i]t's my duty and job to try and dispose of as many of these 26 cases during this five-day period which is available to us as possible, so we will, I assure you, try

to call and dispose of as many of these cases as we possibly can."

Although, out of context, one could paint the court's statement with a connotation of lopsided values, one must consider not only the entire tenor of the orientation but more importantly the manner in which the court conducted defendant's trial later that week. The record reflects that it was done with due deliberation and all the procedural safeguards to which defendant was entitled, including a careful and complete charge on the jury's duty with respect to the finding of guilt or innocence.

Moreover, although the words "dispose of" may not be the most neutral expression to convey the idea,[1] the court was merely referring to the constitutional mandate underlying the philosophy of case management in our state, which is the achievement of "the speedy, efficient, and inexpensive resolution of disputes and prosecutions." 1983 Ga. Const., Art. VI, Sec. IX, Par. I.

Where no harm is shown, the conviction must be affirmed. *Robinson v. State*, 176 Ga. App. 18 (335 SE2d 303) (1985).

DECIDED FEBRUARY 12, 1992.

*David W. Griffeth*, for appellant.
*Kenneth W. Mauldin, Solicitor,* for appellee.

---

[1] One meaning is "to get rid of, throw away, discard." Webster's Third New Intl. Dictionary, unabridged.