**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 7, 2014**

# In the Court of Appeals of Georgia

A13A1716. HICKS v. THE STATE.                    DO-064 C

DOYLE, Presiding Judge.

Rakeen Rayneil Hicks was convicted of armed robbery,[1] attempted armed robbery,[2] burglary,[3] four counts of aggravated assault,[4] and fleeing and attempting to elude a police officer.[5] Hicks appeals, arguing that (1) the evidence was insufficient; (2) the trial court erred by making improper comments to the jury pool; (3) the trial court erred by allowing the State to administer the oath to the bailiffs in the presence

---

[1] OCGA § 16-8-41 (a).

[2] OCGA §§ 16-4-1 & 16-8-41 (a)

[3] OCGA § 16-7-1 (b).

[4] OCGA § 16-5-21 (a) (1) & (a) (2).

[5] OCGA § 40-6-395 (b) (5)

of the jury pool; and (4) he received ineffective assistance of counsel. For the reasons that follow, we affirm.

On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[6] This same standard applies to our review of the trial court's denial of [the defendant's] motion for new trial. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[7]

So viewed, the record shows that on or about midnight on April 10, 2010, Sharita Jones arrived home from work and was assaulted at the door of her home by Travis Brown and Eungen Hunter, who brandished handguns. The men, who knew Jones's name, threw Jones down, drug her into her home, and held her, her sister, Chandra, and her sister's children at gunpoint, while they demanded money. The men took approximately $2,000 from Jones's bedroom and fled; thereafter, the victims called police. Chandra and her son testified that one of the men wore a mask, and the

---

[6] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[7] (Footnotes omitted.) *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

2

other man had dreadlocked hair. Chandra later identified Brown from a photographic line-up.

Two officers responded to the scene, and Officer Julian Dews noticed a silver or grey Ford Expedition on the left side of the street near Jones's home. Officer Dews saw a male approach the vehicle on the passenger side and occupants of the vehicle yell and point that the perpetrators had run in a certain direction. Officer Dews stated to the other officer that he believed that the men in the vehicle were involved in the incident, and he maneuvered his patrol car to get a better position on the vehicle; the vehicle left, beginning a long high-speed chase. During the chase, the occupants of the Expedition threw objects out of the vehicle, reached speeds of 100 miles per hour, and failed to obey traffic signs. Officer Dews's vehicle became stuck in a field during the chase, and Officer Joseph Owens proceeded to chase the vehicle. Officer Dews, however, retraced his route after ending his chase, and he retrieved a number of items that had been thrown out of the vehicle, including clothing and a half-ton floor jack.

Officer Owens testified that he began chasing the vehicle, which contained three individuals at the beginning of the chase. The officer continued to pursue the Expedition until its tires were deflated on spike strips, after which time the driver lost control and crashed into a ditch. The driver exited the vehicle and continued into a

3

wooded area, and Officer Owens pursued him on foot, while another officer chased the two passengers who fled in the opposite direction.[8] Eventually, other officers with search dogs located Hicks, whom Owens recognized as the driver of the vehicle, in the woods in the area where Officer Owens saw him flee. When taken into custody, Hicks stated first that he was not driving the vehicle, and then he stated that he was forced to drive the vehicle. The passengers were not located at that time.

Hicks explained to officers that he was made to drive the others to Jones's house to get the money and that he was not involved with the robbery other than having been forced to drive them; later, Hicks changed his statement to say that he was called to the location by the other men and panicked and fled when the police arrived at the scene. Hicks told officers that an individual named Hunter was involved. Officers also found a cellphone at the scene, which belonged to Brown, and were able to determine Brown's identity based on the phone's content.

Officers also discovered in the vehicle a wallet with Hicks's driver's license, a business card with Hunter's name on it with Hicks's license, and credit and debit cards with Hicks's name. Hunter's wallet was also recovered from the vehicle. The

---

[8] The jury also viewed the video from Officer Owens's vehicle dash camera showing the vehicle crashing and the occupants fleeing in opposite directions.

4

vehicle was determined to belong to Hunter's sister, and Hunter and Brown were arrested approximately a month later and a year later, respectively.

1. Hicks first argues that the evidence was insufficient because no direct evidence showed that he committed any of the crimes except for fleeing and attempting to elude officers.

> [A] participant to a crime may be convicted although he is not the person who directly commits the crime. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime. The question of whether [a defendant is] a party to [a crime is] for the jury to resolve.[9]
>
> Conduct which discloses a common design, even without proof of an express agreement between the parties, may establish a conspiracy. Presence, companionship and conduct before and after the commission of the alleged offenses may be considered by the jury and are

---

[9] (Punctuation and citation omitted.) *Hines v. State*, 320 Ga. App. 854, 857 (1) (740 SE2d 786) (2013), quoting *Jordan v. State*, 281 Ga. App. 419, 422 (1) (636 SE2d 151) (2006).

circumstances which may give rise to an inference of the existence of a conspiracy.[10]

The evidence as stated above was sufficient for a reasonable jury to conclude that Hicks was a party to the crime.[11] Accordingly, this enumeration is without merit.

2. Next, Hicks contends that the trial court erred by making improper comments to the jury venire, which remarks consisted of the following:

We, prior to today, have asked these folks, these [d]efendants, to be here on numerous occasions, hopefully to be able to resolve their case with the district attorney. These folks that are on my calendar here were not able to do that prior to today, but a majority of them now have decided that they need to go ahead and resolve their case before you're selected

---

[10] (Punctuation omitted.) *Hines*, 320 Ga. App. at 857 (1) (c), quoting *Heard v. State*, 287 Ga. 554, 559-560 (5) (697 SE2d 811) (2010) and *Burnette v. State*, 241 Ga. App. 682, 683-684 (1) (527 SE2d 276) (1999).

[11] See *Thornton v. State*, 292 Ga. 87, 88 (2) (734 SE2d 393) (2012) (evidence was sufficient to prove appellant was a party to the crime of armed robbery and burglary because he drove the getaway vehicle); *Buruca v. State*, 278 Ga. App. 650, 652-653 (1) (629 SE2d 438) (2006) (jury could find that defendant was the getaway driver and therefore a party to the crime); *Jackson v. State*, 274 Ga. App. 279, 281 (617 SE2d 249) (2005) (because getaway driver waited for his co-defendant to return to the vehicle, evidence was sufficient to find the driver guilty of crimes directly committed by co-defendant); *Head v. State*, 261 Ga. App. 185, 187 (1) (582 SE2d 164) (2003) (affirming defendant's conviction as a party to the crime of burglary because defendant drove the perpetrator to the premises, served as the getaway driver, and sped away from the scene after the burglary was committed).

to try the case. So[,] I reckon what I'm trying to say is that we've done all we could do to resolve the case before we brought you here today. But on certain occasions, there are cases that we have to bring you here before those folks will decide if they need to go ahead and do something to resolve their case and they have.

Now we have two other cases hopefully that we're going to be able to select today, and then that will conclude the business that we would have for you today. Now, what we intend to do today is to impanel two juror — two twelve-member jury panels that will be back here on a day certain for the actual trial of these cases. We're certain that we're probably going to be able to select one of them, but we're not certain about the second one. We're going to see what we can do, but we will go ahead and select the first one.

(a) Hicks's attorney failed to object to the statements or move for a new venire or new trial. Although the State contends that Hicks has waived the issue,[12] we review the trial court's comment for a violation of OCGA § 17-8-57, independent of Hicks's failure to object to the statement or move for a mistrial.[13] The Supreme Court of

---

[12] See *Bowden v. State*, 237 Ga. App. 204, 205 (515 SE2d 178) (1999). See also *Edmonds v. State*, 196 Ga. App. 190, 194 (1) (395 SE2d 566) (1990).

[13] See *Ledford v. State*, 289 Ga. 70, 85 (14) (709 SE2d 239) (2011) (disapproving *again* cases in which waiver of OCGA § 17-8-57 was found for failure to object); *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010).

Georgia has "clarified that a violation of OCGA § 17-8-57 will always constitute 'plain error,' meaning that the failure to object at trial will not waive the issue on appeal. On appeal, the issue is simply whether there was such a violation. If so, it is well established that . . . a violation . . . requires a new trial."[14]

Here, although the trial court's comments may have come close to commenting on Hicks's guilt or innocence had they been made only to his jury panel immediately prior to trial, in the context in which they were made, approximately three weeks prior to trial and before the entire jury venire rather than an individual panel, the comments constituted an explanation to the jury pool of the procedure leading up to their service as jurors and were not the type of comments to attach any potential negative connotation to Hicks.[15]

(b) Nevertheless, Hicks maintains that even if he waived his right to challenge the court's remarks by failing to object at trial, he should receive a new trial because

---

[14] (Punctuation and citation omitted.) *Gardner*, 286 Ga. at 634.

[15] See *Hufstetler v. State*, 274 Ga. 343, 344-345 (2) (553 SE2d 801) (2001) ("Under these circumstances, no reasonable juror would have interpreted the trial court's remark as the expression of an opinion on any issue to be decided in the case.").

8

his trial counsel was ineffective for failing to lodge an objection to the statements and move to strike the venire or for a mistrial.

> To prevail on a claim of ineffective assistance under the two-pronged test set forth in *Strickland v. Washington*,[16] [Hicks] must show that counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[17]

Hicks's trial counsel testified at the motion for new trial hearing that she did not believe the court's statements were a comment on Hicks's guilt or innocence because the court did not use words like "plea" or "guilty" and merely constituted an explanation to the jury pool of the procedure leading up to their service as jurors. Pretermitting whether Hicks's attorney was ineffective for failing to object to the court's statements, based on our conclusion in Division (2) (a) that the court's comments did not violate OCGA § 17-8-57, this claim is without merit.[18]

---

[16] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[17] (Punctuation omitted.) *Pitts v. State*, 323 Ga. App. 770, 773 (3) (747 SE2d 699) (2013).

[18] Cf. *Hale v. State*, 310 Ga. App. 363, 369 (2) (714 SE2d 19) (2011) (holding that while the trial court's "evidentiary preview" to the jury discussing how the court earlier threw out the State's evidence of a blood test was improper, any affect of

9

3. Hicks also contends that the trial court erred by allowing the prosecutor to administer the oath to the bailiffs in the presence of the jury pool.

(a) Hicks failed to object to the act at trial, and therefore, he has waived the issue on appeal.[19]

(b) Hicks also maintains that his trial counsel was ineffective for failing to object at trial when the trial court instructed the prosecutor to swear the bailiffs in before the jury panel. At the motion for new trial hearing, trial counsel testified that it was normal practice in the circuit, and she believed it was permissible. Hicks contends that because the trial court allowed the prosecutor to swear in the bailiffs before the jury pool, it established a bias toward the State.[20] Pretermitting whether it is error for the trial court to allow the prosecutor to administer the oath to the bailiffs,

---

comment on the guilt or innocence of the defendant was harmless in light of the overwhelming evidence of the defendant's intoxication at trial); *Wax v. State*, 293 Ga. App. 365, 365-367 (1) & (2) (667 SE2d 192) (2008).

[19] Cf. *Gilreath v. State*, 247 Ga. 814, 824-825 (4) (279 SE2d 650) (1981) (defendant waived challenge to trial court's alleged error of allowing the prosecutor to administer the oath to the jury by failing to object at trial).

[20] Cf. *Ates v. State*, 155 Ga. App. 97, 98 (2) (270 SE2d 455) (1980) (reversing conviction when the trial court allowed the prosecutor to administer the oath to the jury because OCGA § 15-12-139 requires administration of the oath by a judge or clerk). We note that no such requirement limiting administration of the bailiff oath to a judge or clerk appears in the code section at issue here. See OCGA § 15-12-140.

and thus, whether trial counsel was deficient for failing to object, Hicks has not established prejudice as a result.[21] The alleged error occurred approximately three weeks prior to trial, when the trial court was addressing the jury pool before striking a jury for the case. Thus, it is unlikely that this singular act occurring in the midst of various procedural tasks resulted in bias of the jurors in favor of the State at the trial three weeks later. Moreover, this act was not the expression of an improper opinion about the case on the part of the court or an intimation of whether Hicks was guilty or innocent, and therefore, it did not constitute a violation of OCGA § 17-8-57.[22] Hicks has therefore failed to establish that his counsel's performance was ineffective.

---

[21] See *Taylor v. State*, 264 Ga. App. 665, 666 (1), 668 (3) (592 SE2d 148) (2003) (no presumption of actual prejudice when defendant failed to timely object to administration of incorrect jury oath, and therefore, no showing of ineffective assistance of counsel for failing to object). Compare with *Ates*, 155 Ga. App. at 97 (presumption of prejudice when prosecutor was allowed to administer juror oath in direct contradiction of the statutory language).

[22] Cf. *Osterhout v. State*, 266 Ga. App. 319, 322-323 (3) (596 SE2d 766) (2004). See also *Anthony v. State*, 282 Ga. App. 457, 459 (2) (638 SE2d 877) (2006) ("Counsel's failure to make a meritless objection . . . does not constitute ineffective assistance.").

11

4. Finally, Hicks argues that counsel was ineffective for failing to call unspecified witnesses.[23] Hicks does not provide any citation or information regarding the identity of the witnesses or any specific testimony Hicks anticipated they would provide beyond his statement that "[t]he witnesses could have provided more insight into where [Hicks] was during the crime and his participation in the matter."

At the motion for new trial hearing, counsel testified that Hicks presented a list of character witnesses, and other than Hicks's wife, counsel was unaware that any of the witnesses could testify about the facts of the events or provide exculpatory testimony.[24] As for Hicks's wife, trial counsel interviewed her several times and did not believe that she could offer any exculpatory testimony. Trial counsel subpoenaed several of the character witnesses, and two of those individuals appeared at court on the day of trial. One of the character witnesses decided not to testify because he had

---

[23] To the extent that Hicks states that his trial counsel was ineffective for waiving a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964), he provides no argument in support of the contention, and therefore, the alleged error is waived. See Court of Appeals Rule 25 (c) (2). See also *Wilkie v. State*, 153 Ga. App. 609 (1) (266 SE2d 289) (1980) (holding that enumerations were abandoned by the appellant for failure to support them by citation of authority or argument beyond "[a] mere statement of what occurred at trial . . . and the contentions of the appellant").

[24] See *McDaniel v. State*, 279 Ga. 801, 802 (2) (a) (621 SE2d 424) (2005) (trial court authorized to accept trial counsel's testimony over the defendant's testimony).

12

pending drug charges and had been shot by one of Hicks's co-defendants, and trial counsel relayed this information to Hicks prior to trial. Trial counsel testified that she and Hicks had agreed he would testify in order to present his defense, and then she would call the remaining character witness; however, at trial, Hicks decided not to testify, so she could not call the character witness. Although Hicks contended at the motion for new trial hearing that he wanted to testify and was strong-armed into remaining silent by his attorney, he did not provide any insight or proffer as to facts to which the witnesses would have testified in support of his contention that trial counsel was ineffective for failing to call the witnesses.[25] Accordingly, Hicks has failed to establish the prejudice prong of his claim of ineffective assistance of counsel.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[25] See, e.g., *Mingledolph v. State*, 324 Ga. App. 157, 161-162 (2) (749 SE2d 757) (2013) ("Given that [the defendant] presented no evidence showing that the missing witnesses would have offered testimony that supported his theory of [mere presence], he failed to show a reasonable probability that the result of his trial would have been different had trial counsel been successful in securing the testimony of these witnesses.").